[No. 1533.]

## GEORGE D. BLISS, RESPONDENT, *v.* GEORGE W. GRAYSON AND J. P. ANDERSON, APPELLANTS.

PRACTICE ON APPEAL—NOTICE—FORM—CLERICAL DEFECTS. Notices of appeal are to be liberally construed, and they will be held sufficient if, by fair construction or reasonable intendment, the court can say that the appeal is taken from a judgment or an order in a particular case. Clerical defects, suggested by the reading of the notice itself, will not be sufficient to authorize a dismissal of an appeal.

ORDERS OF COURT—RECITALS. Where an order recites that it was made by the court it is sufficient, notwithstanding it is simply signed by the district judge.

PRACTICE—NOTICE OF APPEAL—SERVICE ON CODEFENDANTS. Where codefendants have made separate motions for a new trial, the defendant whose motion is denied may appeal without serving a notice of appeal on his codefendants, whose motion has never been passed upon by the court, and who are not adverse parties to the appellant.

IDEM—NEW TRIAL—STATEMENT—RECORD ON APPEAL. Under the amended practice act of 1893 (Stats. 1893, p. 88), providing that, on the argument of a motion for new trial, reference may be made to the pleadings, depositions and evidence, and the minutes of the court, the trial court, in determining the right of a party to a new trial, is not limited to the specific matters contained in the statement or affidavits on motion for a new trial; and the original pleadings will be considered as part of the record on appeal, although not embodied in such statement, or identified as having been read or referred to on the hearing of the motion.

PRACTICE ON APPEAL—FILING OF RECORD. Under the law permitting an appellant to file the original papers constituting the record on appeal, a volume of the original engrossed statement on motion for new trial may be considered, although not filed until after the other volumes of the record have been filed.

IDEM—STATEMENT—RIGHT OF COPARTIES TO USE. Where coparties make a joint statement on motion for a new trial, it is the right of any one of them to use such statement on appeal.

IDEM—NOTICE OF APPEAL—SERVICE. A notice of appeal by a defendant need not be served on defendants who were dismissed from the action before judgment.

APPEAL—CERTIFICATE TO TRANSCRIPT—WAIVER. Respondent, by appearing and filing his points and authorities upon the merits of the case, waives all objection to the clerk's certificate to the record.

PRACTICE—PARTIES—NUISANCE—INJUNCTION. In an action to abate and enjoin a nuisance only those persons should be made parties who would be liable to respond in damages.

IDEM—IDEM—RIGHTS OF OTHERS AFFECTED—MUST BE MADE PARTIES. Under Gen. Stats. 3039, providing that, when a complete determination of the controversy cannot be had without the presence of other parties, the court must order them brought in. All persons materially interested, either legally or equitably, in the subject matter of the suit, must be made parties when their rights will be affected by the final decree.

Argument for Appellants.

Idem—Idem—Injunction—Owners of Water Rights. Where, in a suit to enjoin the diversion of the water of a stream as interfering with plaintiff's right to a specific quantity thereof for irrigation, both plaintiff and defendants have acquired rights to the use of the waters by the appropriation thereof by means of dams and ditches, and defendants claim by right superior to the rights of other land owners who maintain dams between those of plaintiff and defendants, such intermediate owners are necessary parties to the suit.

Idem—Idem—Idem—Idem—Diversion of Water by Persons Not Parties to Suit. Where a great quantity of water usually flows in a stream, in excess of any claim of right of plaintiff thereto for irrigation, and a *bona fide* claim of right to a part thereof had been made by defendants in manner and form required, and such right had been exercised by them peaceably for a great number of years prior to any alleged invasion of plaintiff's right, and the diversion alleged is shown to have been made in great part by persons other than defendants, by means of dams between those of plaintiff and defendants, plaintiff will not be entitled to enjoin the diversion by defendants, without showing that such other persons had or claimed a right to the water diverted by them.

Water—Irrigation—Nuisance—Prescription. The maintenance of dams for the purpose of diverting waters for irrigation, and the diversion thereof for such purpose, so as to materially diminish the amount, or even consume the entire quantity, flowing in a stream, is not of itself a nuisance, where such diversion has been continued for a great number of years under claim of right.

Appeal from the District Court of the State of Nevada, Humboldt county; *A. L. Fitzgerald*, District Judge:

Action by George D. Bliss against George W. Grayson and others. From a judgment for plaintiff, defendants appeal. Reversed.

The facts sufficiently appear in the opinion.

*Robert M. Clarke*, for Appellants:

I.  The action being to abate a nuisance, and there being thirty defendants, acting independently, there is a fatal misjoinder of parties, and the action must fall. (Gould on Waters, sec. 397; 47 Conn. 260, 273, 274; 10 Allen, 591; 77 N. Y. 51; 63 Barb. 111; 35 Wis. 41; 53 Pa. St. 142; 40 Md. 1; 32 Cal. 166–168; 53 Cal. 724, 731–734; 8 Ency. Law & Eq. 217.)

II.  If thirty persons acting independently may be joined in one suit, all may be, and, to avoid a multiplicity of suits, all must be joined. (Story Eq. Pl. sec. 72–76; 2 Atk. 574; Pomeroy's Eq. Jur. sec. 114; 57 Cal. 56; 87 Cal. 433.)

III.  To enable plaintiff to maintain this action it must

appear that plaintiff has been deprived, and will continue to be deprived, of a right, to wit, the right to have water to irrigate his land. (Gould on Waters, sec. 512, 517; Wood, Law of Nuisances, sec. 867–771–772; *Fisher* v. *Clarke*, 41 Barb. 327; 70 Pa. St. 415; 57 Pa. St. 107; Kerr on Injunctions, sec. 172; High on Injunctions, sec. 742.) In this case it does not appear that the deprivation or injury is continuous; on the contrary, the injury was occasioned by excessive drought, and, if any suit would lie, it should be against Providence. It must also appear that defendants are the wrongdoers, that is to say, produce the injury. (Gould on Waters, sec. 512; *Proctor* v. *Jennings*, 6 Nev. 87–88; 3 Fairfield, 238; 9 Watts, 119.) In this case plaintiff was not injured by defendant's dams, but by the exceptional dryness of the season.

IV. There is more water in ordinary years than plaintiff requires, or is entitled to have; and defendants have a right to this, and cannot be enjoined from taking it. (Pomeroy, sec. 83–84; 13 Cal. 38–40; 21 Cal. 381–382; 10 Nev. 254; 6 Nev. 87–88; Gould on Waters, sec. 213–214, 407–409.)

V. In an action for an injunction, the real wrongdoers must be found. Defendants cannot take the water without dams. To abate the dams would destroy their right.

VI. The court erred in treating the action as one to abate a nuisance, and refusing to adjudicate the rights of the parties to the suit. If the action is one to abate the dams of the several parties, it is bad either (*a*) for non-joinder, because all the parties maintaining dams in the river, and diverting water, are not before the court, so that it might appear which dams, if any, were wrongfully diverting water; or (*b*) misjoinder, because three persons, severally maintaining dams and acting independently, are united in the same action. (Gould on Waters, sec. 222, 397, 398; *Sellick* v. *Hall*, 47 Conn. 260; 77 N. Y. 51; 35 Wis. 41; 32 Cal. 166; 53 Cal. 724; 53 Penn. St. 142; 40 Md.)

VII. Neither Grayson nor Anderson could be sued because Dunphy maintained a dam, for they had nothing to do with Dunphy's dam, and had no power to remove it. They could not prevent, and were in no manner responsible for, Dunphy's act. And, except upon the theory that the action is one in

equity to determine the rights of adverse claimants to have the water, or a portion of the water of the stream, it could not be maintained at all.    In this arid region, where irrigation is a necessity, dams in the streams are authorized by law, ånd are necessary for the diversion of water.    Dams are not a nuisance *per se.*    They only become a nuisance, if at all, when they operate to produce some substantial injury, or impair some valuable and superior right.    (Gould on Waters, secs. 401–410; *Embrey* v. *Owen*, 6 Exch. 353, 368; *Durmont* v. *Kellogg*, 29 Mich. 420, 422, 425; *Elliot* v. *Fitchburg R. Co.*, 10 Cush. 191, 197; *Union M. & M. Co.* v. *Dangberg*, 2 Saw.; *Wood on Nuisances*, sec. 373, 374; *Wadsworth* v. *Tillotson*, 15 Conn. 369; *Gillett* v. *Johnson*, 30 Conn. 183; Wood on Nuisances, sec. 788, 789.)

VIII.    If the action be one to abate a nuisance, caused by the wrongful diversion of water away from plaintiff's land, not only must a substantial injury be shown, but the real wrongdoers must be found.    For, since the Humboldt river in ordinary years carries more water than Bliss is entitled to have, the defendants were entitled to have the surplus, and if other parties who were without right diverted water, they were the real wrongdoers, and should have been sued; at least, they should have been joined in the suit, so that defendants, Grayson and Anderson, might have cleared themselves, and caused the real wrongdoers to be enjoined.

IX.    In a large stream like the Humboldt, flowing, during the irrigating season of ordinary years, nearly one hundred thousand inches of water, and supplying a vast community with water for both their natural and artificial wants, a manifest and imperative public policy demands that vexatious, harassing litigation be avoided, and that where a single suit will accomplish the result of many, this single suit shall be brought—indeed, *must* be brought—and the rights of claimants ascertained and fixed by a single decree. It is one of the most important functions of equity to do complete justice, and not by halves.    To avoid a multiplicity of suits and prevent future litigation, is a principal source of equity jurisdiction.    In this case the exact opposite seems to have been the guiding motive of the court, for the court dismissed parties who were before it asserting rights, and,

after hearing the evidence, refused to fix the rights of the remaining defendants, who, at great expense of time and money, had exhibited their rights to the court. No greater disregard of the duties of a court of equity, or abuse of its authority, could be displayed than is shown in this case. Thirty persons, each claiming and using a portion of the water of the stream adversely to plaintiff, are sued, served with the process of the court, forced to employ counsel and plead, and make proof of their rights, and then twenty-seven of them are dismissed upon the motion of plaintiff and against the objection of the remaining defendants. And as to the remaining defendants, the court refuses to fix their affirmative rights, either as to the plaintiff, the defendants dismissed, or among themselves. If this proceeding is sanctioned by the court, then, indeed, is the first principle of equity subverted, and endless litigation brought upon the country. For, in this case, Bliss may maintain a separate suit against each person maintaining a dam on the Humboldt river, or any of its tributaries, and each person maintaining a dam may bring a separate action against every other person diverting water above him, so that many hundreds—nay, many thousands—of suits could be brought, and the millennium would come, and the substance of every litigant be exhausted, before the end would be reached. Indeed, if the example of this case were followed and defendants refused affirmative relief, each claimant of water would be forced to bring suit against every other claimant before he could get a decree effectively establishing his right. Nor is the course pursued in this case at all in keeping with the practice in this state; on the contrary, it is contrary thereto. In *Lobdell* v. *Hall and Simpson*, 2 Nev. 274, defendants claimed a portion of the water and had decree therefor. In *Barnes* v. *Sabron*, all the persons living on the stream, and claiming an interest in the water, were before the courts, and the rights of all were settled by the decree. In *Dick* v. *Caldwell*, 14 Nev. 167, all parties claiming an interest on the stream, twenty in all, were joined as defendants, and the rights of all were fixed by the decree. In *Smith* v. *Logan*, 18 Nev. 149, the court not only decreed the rights of defendant, Logan, but directed the court below to modify its decree as to him.

In this case the court clearly indicates that all parties claiming an interest should be united in the suit. In *Schulz* v. *Sweeney*, 19 Nev. 359, all the defendants claimed an interest in the stream, and the court, in its opinion, says: "Exceptions were taken to the failure of the court to ascertain, by its findings of fact, the extent of defendant's appropriation of water. The decree provides that the water of the channel shall pass over the lands of plaintiff, before any right to its use by defendant shall attach. *In this respect, it is technically erroneous.* Defendant, as an appropriator of the water, should have the right to divert it to the extent of his appropriation, either above or below the lands of plaintiff. The decree should have ascertained the amount of water to which he was entitled, and recognized this right."

*W. S. Bonnifield* and *Byron Waters*, for Respondent:

I.    Those defendants who obtained a judgment of dismissal in this action are not *necessary or indispensable* parties to a determination of the issues as between respondent and appellants. (*Cole S. M. Co.* v. *Virginia W. Co.*, 1 Saw. 473; *Rosina* v. *Trowbridge*, 20 Nev. 105; *Blaisdell* v. *Stephens*, 14 Nev. 17; *Wheeler* v. *Wooster*, 10 Allen, 501; Angell on Watercourses, sec. 404; Pomeroy on Code Remedies, sec. 329.) In equitable actions there is a broad distinction between "*necessary*" and "*proper*" defendants; and sec. 330, 1 Saw. 473; 57 Cal. 56, as to who are "*necessary*" and who "*proper*" parties.

II.    All persons intending and threatening an invasion of the right, or any number of them less than all, may be joined and proceeded against in the same suit to compel a cessation of the invasion of that right in the future. (*Blaisdell* v. *Stephen*, 14 Nev. 17, 23, 24; *Hillman* v. *Newington*, 57 Cal. 56; *People* v. *Gold Run Co.*, 66 Cal. 138, 148, 150; *Heilbron* v. *Canal Co.*, 76 Cal. 17; *Gould* v. *Stafford*, 77 Cal. 67; *Woodruff* v. *North Bloomfield Co.*, 8 Saw. 628, 630, 637; *Cole M. Co.* v. *Virginia W. Co.*, 1 Saw. 473, 476, 477.)

III.    Where a nuisance is committed by several, and is a malfeasance, the plaintiff may sue *any* of those who did the wrong, and the non-joinder of the others cannot be pleaded in abatement; as, if the rightful flow of the waters of a

stream is obstructed by the joint action of several parties, although not acting in combination or by concert, it is no defense to the maintenance of an action against one of them that all are not joined as defendants; but this objection goes only to the damages. (Angell on Watercourses, sec. 404.)

IV. There is no misjoinder of parties defendant. This is not an action to recover damages. The wrongful diversion of the water is *tortious*, the cause of action is both joint and several, and any number of such wrongdoers may be sued. (*Cole S. M. Co.* v. *Virginia W. Co.*, 1 Saw. 473; *Woodruff* v. *North Bloomfield*, 8 Saw. 628; *Hillman* v. *Newington*, 57 Cal. 56; *Blaisdell* v. *Stephens*, 14 Nev. 19; *Wheeler* v. *Wooster*, 10 Allen, 501; Angell on Watercourses, sec. 404; Pomeroy on Code Remedies, secs. 271, 273, 274; and secs. 275–6–7–8 and 9, as to liability in actions *ex contractu*; secs. 281–2, as to liability in actions *ex delicto*; sec. 307, common law as to liability for torts not changed by the code.)

V. The diversion of the water of a stream is a private nuisance to the prior appropriator who is injured thereby, and he can maintain an action for such nuisance. For a *past* diversion, the *only remedy* is a recovery of damages; but when the *diversion is continuing*, equity will interfere by injunction. (Black's Pomeroy on Water Rights, sec. 72; *Tuolumne W. Co.* v. *Chapman*, 8 Cal. 392: *Parke* v. *Kilham*, 8 Cal. 77; *Brown* v. *Ashley*, 16 Nev. 512, *et seq.*; Angell on Watercourses, sec. 388.)

VI. The statute of March 13, 1895 (Stats. 1895, p. 58), does not in any way change the papers which must constitute "the record on appeal." It merely provides that instead of a transcript or copy of those papers, the originals themselves may be sent up as "the record on appeal." But the same papers which constituted "the record on appeal" in any given case, before that act was passed, constitute "the record on appeal" since the passage of this act. (*Holmes* v. *Iowa M. Co.*; 23 Nev. 23; *Peers* v. *Reed*, 23 Nev. 404.)

VII. Section 340 of the civil practice act is mandatory in its requirement that the appellant "*shall* furnish the court" with the papers which constitute "the record on appeal." And, "if the appellant fails to furnish the requisite papers, the appeal may be dismissed." For the supreme

court has no jurisdiction to review a case on appeal, unless the papers requisite to constitute "the record on appeal" are furnished. And the latter part of this section provides what disposition shall be made of cases in which the papers requisite to constitute "the record on appeal" are not furnished by the appellant. Since the supreme court cannot review a case on appeal except upon "the record on appeal," composed of the papers requisite to constitute such a record, and since it is incumbent on the appellant to furnish such a record, if he fails to do so, the only disposition which can be made of such a case is to dismiss the appeal; and this latter part of the section invests the supreme court with the authority to make that disposition of a case where the papers requisite to constitute "the record on appeal" are not furnished. The statute is emphatic in its mandate that *the appellant* shall furnish the requisite papers. It is incumbent on the appellant to furnish the papers requisite to constitute that record. Such a "record on appeal" must be furnished as will give the supreme court jurisdiction to review the matters complained of, or the appeal cannot be heard.

VIII. As to what are "*the papers* used on the hearing in the court below" depends wholly upon the kind of order which is appealed from. If the order appealed from is an order granting or refusing a motion for new trial, then "the papers used on the hearing in the court below" will depend wholly upon the general grounds or "causes" upon which the motion was made. For example, if the "cause" is one mentioned in the first four subdivisions of section 195 of the practice act, we see by section 196 that "*affidavits*" are used "on the hearing in the court below"; if the "cause" is mentioned in the fifth, sixth or seventh subdivision of section 195, "*a statement*" is used "on the hearing in the court below." And where the motion is made on the causes mentioned in these last three subdivisions (the fifth, sixth or seventh), we see by section 197 (Stats. 1893, p. 88) that, in addition to the *statement*, there are five classes of enumerated papers ("such pleadings, depositions," etc.) that may or may not be "papers used on the hearing in the court below," just as it may or may not appear that they were "read or referred to on the hearing" of the motion.

IX. *The case at bar* is an attempted appeal from an order refusing a motion for new trial, *claimed by appellants* to have been made on the " sixth " and " seventh " general " causes " or grounds set out in section 195 of the practice act. It is self-evident, from section 197 of the practice act, that "*the record made and used in the court below,*" can consist of *only:* (1) *The statement of the case on motion for new trial,* and (2) *such " pleadings, depositions,*" *etc., as are read or referred to on the hearing of the motion.* It is also clear, from section 340 of that act, that "*the record on appeal,*" which these appellants must furnish the court can consist of only: (1) The notice of appeal; (2) the order; and (3) "*the papers used in the court below.*" And since "*the papers used in the court below*" can be only: (1) The statement of the case on motion for new trial; and (2) such " pleadings, depositions," etc., as *were " read or referred to* on the hearing " of the motion, it follows, as a necessary consequence, that, in the case at bar, "*the record on appeal*" can consist of *only:* (1) The paper claimed to be a notice of appeal; (2) the order; (3) *the statement* of the case on motion for new trial, and such " pleadings, depositions," etc., *as were read or referred to on the hearing of the motion.*

X. "As the mode of taking an appeal required by the statute is *mandatory,* and *must* be strictly complied with, the notice of appeal *must be framed,* issued and served as the statute requires, or no legal appeal is perfected. No other method of service is a legal substitute; actual knowledge of the appellee that an appeal has been taken *will not dispense* with the statutory requirement." (2 Ency. Pl. & Pr. 213, and cases cited.)

XI. "A *notice of appeal* will be liberally construed; irregularities or surplusage, in the body of the *notice* will not vitiate *it,* if the defects do not conflict with some express provision of the statute, or if the defects do not render a material fact" (which is stated in the notice) " ambiguous or uncertain." (2 Ency. Pl. & Pr. 216.) But irregularities and surplusage, or any other defect, cannot be disregarded and rejected, if to do so would conflict with an express provision of the statute, or if they render a material fact ambiguous or uncertain.

For the material fact must be *stated,* and it must be stated free from *ambiguity* and free from *uncertainty.*

XII.  "The sufficiency of the notice of appeal should appear to the court upon *its face,* and unless the court can identify the material facts requisite for a valid notice, *from* the *notice itself,* the question whether it was sufficient to give the appellee actual knowledge will not be considered." (2 Ency. Pl. & Pr., 216, and cases cited.)   It is not a question as to whether the respondent has, or might have had, actual knowledge of these material facts by examining the undertaking, statement, or the brief, or otherwise; but the question is:   Does the *notice state* the material facts with *certainty* and free from ambiguity; does it *state, designate and point out* the material facts as prescribed by the statute?   "Actual knowledge of the appellee that an appeal has been taken will not dispense with the statutory requirements." (2 Ency. Pl. & Pr. 213, and cases cited.)

XIII.   The sufficiency of the notice must appear *upon its face.   Omitted* words do not *appear upon its face.*   An appellate court derives its jurisdiction from the law.   The law requires that the identity of the subject matter of its jurisdiction shall be stated in words which *appear* on the face of the note itself.   The court has no power to supply material words, which the law requires shall *appear* on the face of the notice, in order to vest jurisdiction in the appellate tribunal. The court will not supply such omitted words, for that would be to make its jurisdiction by its own act.   In deciding as to its jurisdiction of the subject matter, it will consider only what appears upon the face of the notice.   It will not supply omitted words.   (*Morris* v. *Brewster,* 60 Wis. 229.)

XIV.   The subject matter should be stated, and stated with clearness in the notice.   "It should *specify,* with *clearness* ": (1) "The title of the action," (2) "the name of the parties," (3) " the cause in which the appeal is taken," (4) " the court from which the appeal is taken," (5) " the judgment or *other proceeding appealed from,*" (6) " and· inform appellee that appellant appeals therefrom." (2 Ency. Pl. & Pr. 214, and cases cited.)

XV.   This notice appears to have been framed as an act of open rebellion against each canon and rule which the law

has prescribed for testing the sufficiency of a notice of appeal. So far from *expressing on its face,* with clearness, and free from ambiguity and uncertainty, the six material matters which the law requires as essential to its validity as a notice of appeal, it completely fails to *express,* "with clearness" or at all, *either one* of those six material matters. It is a model of uncertainty and obscurity. Its many infirmities will be apparent by a comparison of the two blank notices of appeal, given in this brief. The one ("A") being an exact copy of the notice in this case; the other ("B") being, I apprehend, a sufficient notice of appeal. Such a comparison will illustrate the words and parts of words which would have to be erased, and the many words and phrases which would have to be supplied to this notice in order to make it a sufficiently certain and valid notice. It will be noticed, also, in the cases cited on the argument, that, in each case where a notice of appeal was held to be insufficient, it was insufficient in only some one or more particulars, while this notice is entirely insufficient in *every particular.*

By the Court, MASSEY, J.:

The respondent asks that this appeal be dismissed for a number of reasons, based upon alleged defects in the record. That the discussion of the questions presented by respondent's motion may be fully understood, it is necessary to recite some of the facts upon which the motion is based. The appeal is taken from an order of the lower court denying appellants' motion for a new trial. The record filed in this court consists of original papers. The first volume of the record is composed of the complaint, answers, stipulations, judgment and other papers. The statement on motion for a new trial consists of two volumes filed in this court on April 2, 1898, and one additional volume, over which there is contention, filed on the 4th day of May, 1898. The record, in brief, consists of four volumes, composed of original pleadings, stipulations, findings, and three volumes of the statement on motion for new trial, the order denying the motion for new trial, notice of appeal, and undertaking on appeal. The order denying the motion for a new trial was made on the 11th day of December, 1897, and we find, among the

papers not certified as having been used, read, or referred to on the hearing in the court below, a stipulation entered into on that date, between the respondent and the appellants, to the effect that in any appeal in said action, and the hearing of the same, either party might produce any exhibit mentioned in the engrossed statement on motion for new trial, and the same should be considered a part of the record on appeal, as though properly endorsed and duly certified by the judge of the trial court as having been used, read, or referred to on the hearing of the motion for a new trial.

There is a further stipulation of a different date, submitting the appellants' motion for a new trial to the lower court without argument, and to the effect that the original maps and exhibits on file in said court shall be endorsed by the judge as having been used at and upon the hearing of said motions, and the same shall constitute a portion of the record and statement on motion for a new trial. On the 4th day of April, 1898, an order was made by this court setting the cause for hearing on the 9th day of May, 1898. On the 18th day of April, 1898, the respondent appeared by counsel, and, upon notice given to the appellants before that time, asked the court to vacate its order setting the action for hearing at the time named. This motion was heard, and, upon the showing made, the order of April 4th was vacated, and the hearing of the cause continued until the 5th day of July, 1898, upon the respondent entering into a stipulation to the effect that the judgment of the lower court should be stayed pending the hearing of the cause. On the 3d day of June, 1898, the respondent filed his points and authorities under the rule in which he discusses the merits of the action, and nothing more. On the 5th day of July, 1898, the action was orally argued by counsel, and the objections to the record for the first time made.

It is claimed by the respondent that there is no sufficient notice of appeal served and filed, as required by the provisions of our law, to confer jurisdiction upon this court to hear and determine this appeal. The notice furnished the court is as follows:

"In the District Court of the State of Nevada, Second Judicial District, Humboldt county. George D. Bliss, Plain-

tiff, vs. William Dunphy, George W. Grayson and James P. Anderson, *et al.*, Defendants. Notice of Appeal. The above-named plaintiff, George D. Bliss, and Byron Waters and Wm. S. Bonnifield, plaintiff's attorneys, are hereby notified that the above-named defendants, George W. Grayson and James P. Anderson, appeal to the Supreme Court of the State of Nevada from the order of the court on the motion of said defendants, George W. Grayson and James P. Anderson, for a new trial in the above-entitled action, which said motion was made, entered and filed on, to wit, December eleventh, A. D. 1897. Robt. M. Clarke, Attorney for Defendants George W. Grayson and James P. Anderson."

Counsel assumes in his argument that a specific form of notice is required, and sets out in his brief what he assumes that form should be. Our statute does not require any specific form. It provides in general terms that an appeal shall be made by filing with the clerk with whom the judgment or order appealed from is entered a notice stating that the appeal is from the same or some specific part thereof, and serving a copy of the notice upon the adverse party or his attorney. (Gen. Stats. 3353.)

While this provision of the statute is mandatory, and must be complied with, and the sufficiency of the notice should appear from the face thereof, yet the notice will be liberally construed, and irregularities therein will not render it void, if the material facts appear therein by reasonable intendment. (2 Ency. Plead. &. Prac. p. 216.)

The Supreme Court of Oregon, under a statute similar to ours, say that: "The tendency of the court, as indicated by recent decisions, is to construe notices of appeal liberally, and hold them sufficient if, by fair construction or reasonable intendment, the court can say that the appeal is taken from the judgment in a particular case." (*Crawford* v. *Wist*, 39 Pac. (Or.) 218; *Mendenhall* v. *Elwert*, 52 Pac. (Or.) 23.)

Applying this rule to the notice, it is clearly apparent that the appellants appeal from an order of the District Court of the State of Nevada, Second Judicial District, Humboldt county, in the particular case made in said cause, denying the motion of appellants for a new trial, to the supreme court. It is vigorously contended that the notice is fatally

defective, in that it fails to describe any order appealed from. We do not believe this contention is tenable. It is apparent, from the reading of the notice, that the order appealed from was the order denying the appellants' motion for a new trial, and that the omission of the word "denying" or "overruling" was simply a clerical error, which in no manner affects, or should affect, the validity of the notice. In other words, we must hold that, where it is clearly apparent from the notice served and filed that the substantive matter necessary under the rule announced has been set out in the notice, any clerical defect suggested by the reading of the notice itself will not be sufficient to authorize this court to dismiss such an appeal on account of said defect. If no notice whatever had been served or filed, the question presented would have been different, and the court would have followed the rule laid down in *Marx* v. *Lewis*, 24 Nev. 306, *ante*.

It is further objected that the order denying appellants' motion for a new trial is fatally defective, by showing that the order was made by the district judge, and not by the court. The order recites that it was made by the court, and, notwithstanding the same is signed by the district judge, such recital is sufficient.

It is also claimed by the respondent that the appeal should be dismissed, for the reason that no notice of appeal was served upon Jennie C. Dunphy and Carmen U. Dunphy, executrices of William Dunphy, deceased, and codefendants of the appellants in said action. It appears from the record that the appellants and their codefendants filed separate answers to the respondent's complaint, in which each set up affirmative matter against the right of the respondent to recover. A joint trial was had by the court. The appellants gave a joint notice of intention to move for a new trial, and their codefendants, as the representatives of William Dunphy, deceased, gave a separate notice of intention to move for a new trial. Two separate and distinct motions for new trial were made by the appellants and their codefendants, basing their right thereto upon a statement in which all joined.

On the 11th day of December, 1897, the following order was made by the court: "The motion for a new trial in the

above-entitled cause coming on regularly for hearing this day, Byron Waters, Esq., appearing for the plaintiff, and Harry Warren, Esq., appearing for defendants Grayson and Anderson, the said motion having been duly submitted, the court being unable to discover any error in the judgment or proceedings in said cause, the motion for a new trial therein is denied, and new trial therein refused.   December 11, 1897. A. L. Fitzgerald, District Judge."

This is the only order on motion for a new trial found in the record.   It is clearly apparent therefrom that the motion of the appellants, Grayson and Anderson, was overruled. No appearance was made for their codefendants; there is no recital in the order that their motion was submitted for decision, and the order does not pretend to deny the motion of other defendants than Grayson and Anderson.   Jennie C. Dunphy and Carmen U. Dunphy are not parties to this order, and, under our statute, could not be adverse parties to these appellants.   So far as the record discloses, it does not appear that the motion of the Dunphys for a new trial was ever passed upon or determined by the lower court.   If any such order was made by the trial court, the same is not found in the record furnished this court in this appeal.

It is further claimed, on behalf of the respondent, that the appeal being from an order of the court denying the motion for a new trial, the original pleadings, consisting of the complaints and answers, not being embodied in the statement on motion for a new trial, and not being identified by the certificate of the judge or clerk endorsed thereon as having been read or referred to on the hearing thereof, are no part of the record on appeal, and cannot be considered by this court.

This brings again to our consideration our civil practice act regulating appeals.   It is expressly provided that on an appeal from an order the appellant shall furnish the court with a copy of the notice of appeal, order appealed from, and a copy of the papers used on the hearing in the court below, such copies to be certified to be correct.   (Gen. Stats. 3362.)

The part of the section above cited prescribes what papers shall constitute the record on an appeal from an order, and that the copies thereof certified to be correct shall be fur-

nished the appellate court. A subsequent act, among other things, permits the appellant to furnish, as the record on an appeal from an order denying the motion for a new trial, the original papers used on the hearing below, certified as required by the provisions of the act, instead of the copy of the papers, as required in section 3362, above cited. (Stats. 1895, p. 58.)

The amended practice act of 1893 provides the manner of preparing papers on motion for a new trial for the proper presentation of the same to the trial and appellate court. Among other things, it provides that, on the argument of the motion, reference may be made to the *pleadings*, depositions and documentary evidence on file, testimony taken and written out by a shorthand reporter authorized by the court to make the same, and the minutes of the court. It was thus clearly manifest that the legislature intended by this provision that, in determining the right of a party to a new trial, the trial court should not be limited to the specific matters properly contained in the statement, or contained in the affidavits provided by the same section. The court might, and would of necessity, look to the pleadings and certain other papers on file in passing upon the merits of the motion. (Stats. 1893, p. 88.)

The same intention is manifest in section 3362, above cited, in requiring that copies of the papers, and not the copies of specific papers, used on the hearing, should be furnished the appellate court as the record on appeal. Following the provision authorizing reference to pleadings, etc., on the argument of the motion for a new trial, in the act of 1893, above cited, is the clear and specific declaration of the law, that the affidavits and counter-affidavits, or the statement thus used, in connection with such pleadings, depositions, etc., as are read or referred to on the hearing, *shall constitute without further statement the papers to be used on the appeal* from the order granting or refusing a new trial. Thus, therefore, has the legislature expressly declared what shall constitute the record on appeal from an order granting or refusing a new trial, and by the other acts cited prescribing that certified copies thereof, or the certified originals, be filed as the record in the appellate court.

By the same act the additional requirement is made for the identification of certain of the papers used on the hearing of the motion before they can become a part of the record on appeal. It requires, in express terms, that the affidavit shall be identified by the endorsement of the judge or the clerk at the time that the same were read or referred to on the hearing, and depositions, documentary evidence on file, testimony taken by a reporter, or minutes of the court shall be identified by the certificate of the judge endorsed thereon, to the effect that the same have been read or referred to on the hearing. Nowhere in the statute is it required, by direct terms or by fair inference, that pleadings read or referred to on the hearing of a motion shall be identified or endorsed by the judge or clerk as having been so used, as a condition that they may become a part of the record on appeal. The pleadings are a part of the record in the case, and, when certified to this court as a part of the record on appeal, will be considered as such without further identification; and it is especially proper that it should be so in the absence of direct requirements of further identification, as in the case of depositions, documentary evidence, testimony taken by a shorthand reporter, or the minutes of the court. Neither is it necessary, under this statute, that the pleadings should be embodied in the statement. Neither can this court say that such pleadings were not read or referred to on the hearing of the motion because they are without the endorsement. The fact that they come to the court as a part of the record under certificate, and that the law does not require such endorsement, is sufficient to make them a part of the record, and entitle them to consideration in determining the merits.

It is claimed that this court has decided otherwise, and great stress is laid upon the opinion in *Simpson* v. *Ogg*, 18 Nev. 30, as supporting such claim. In that opinion the following language is used: "On this appeal we are limited in our examination to a statement legally authenticated and to such other papers as properly may have been and were read and referred to by the court below on the hearing; and the only evidence which we can consider, that such papers were used below, is the judge's certificate to that effect." This

language seems to support respondent's claim, but an examination of the record in that case clearly shows that the court did not, and was not required to, decide as the language imports. The question before the court did not require any such statement of the rule. The respondents in the case at the proper time filed their written motion to dismiss the appeal, giving as grounds therefor that the appellants had neither filed or served a notice of appeal; that they had not furnished such an undertaking on appeal as required by the statute; that the paper filed as a statement was not a statement; that no findings of fact or conclusions of law were contained in the transcript, and that no specification of errors was contained in the transcript. The paper which purported to be the statement on motion for a new trial was neither certified by the judge nor the attorneys nor the clerk, as required by the statute, but appeared to be nothing more than a report of the testimony taken by the shorthand reporter, without the endorsement of the judge that it had been used or referred to on the hearing. The appellants sought to avoid the force of this objection by the terms of a separate stipulation by which it was agreed that the report of the testimony was agreed to as constituting the statement on motion for a new trial. The court did not consider such position tenable, and very properly held that the agreement was not sufficient to make the report a statement, as the stipulation contained no agreement, or intention to agree, that the same was correct, but, on the contrary, it was provided, by direct terms in the stipulation, that a bill of exceptions, which was made a part of the statement, should be settled and certified by the judge at a subsequent date, and the respondents should have ten days after the settlement of the bill of exceptions by the judge in which to file amendments to the statement. It will be seen, therefore, that the appeal being from an order denying a motion for a new trial upon the reasons assigned, without a statement, that there was nothing before the supreme court, and it was not intended to decide, nor was it necessary to decide, that the pleadings should not be considered in the appeal unless identified by the certificate of the judge as having been read or referred to on the hearing below.

Again, it is claimed that the appellants have not furnished a complete statement on motion for a new trial; that volumes 1 and 2, furnished, show that they constitute only a part of the statement. The statement, as prepared, consists of three volumes, and the separate motions of the appellants, and of Jennie C. and Carmen U. Dunphy, executrices, are based upon the joint statement of all the moving parties. The certificate of the trial judge, endorsed upon each volume thereof, is to the effect that the specific volume is one volume of the engrossed statement on motion for a new trial, and, with the other two specified volumes, constitutes the statement on motion for a new trial, and is correct, and allowed. Under the law permitting the appellant upon an appeal of this kind, he has a right to file the original papers constituting the record on appeal; and, as volume 3 is a part of the original engrossed statement on motion for a new trial in the appellants' case, they have a right to have it considered, notwithstanding it was not filed until a subsequent date. To the claim that volume 3 of the statement may be a part of the record on appeal of the Dunphys, it is sufficient to say that, under the act of 1895, the statement being a joint statement on behalf of the appellants and the Dunphys, it was their right, as also the right of the Dunphys, to have the entire three volumes considered by the trial court and by the appellate court in determining appellants' motion for a new trial.

Considerable argument has been made by counsel for the respondent against the consideration by this court of the findings of fact and the conclusions of law, and it is urged in that behalf that the findings of fact and conclusions of law are certified here as original papers. The rule of law relied upon and cited in *Alderson* v. *Gilmore*, 13 Nev. 84, is certainly correct, and, under the contention of the respondent, such findings and conclusions are not entitled to consideration; but an examination of the statement on motion for a new trial develops that the same have been fully set out therein as a part of the statement, as were also certain proposed findings which were refused by the court. (Record, Statement on Motion for New Trial, vol. 1, p. 6, *et seq.*)

The further suggestion, that the appeal should be dis-

missed because the notice of appeal was not served on a number of the defendants dismissed from the action before judgment, and before motion for a new trial was made and determined, does not require any consideration; neither does the objection that the certificate of the clerk to the record require consideration, as any defect therein was cured by the admission of the respondent in open court. Moreover, respondent, under the rules of this court, waived any right to make such objection by his general appearance on the 18th of April, 1898, and by filing his points and authorities upon the merits on June 3, 1898. (*Sweeney* v. *Hjul*, 23 Nev. 416.)

For these reasons the motion to dismiss will be denied.

We have, therefore, a record on appeal from the order denying appellants' motion for a new trial, consisting of the order appealed from, the notice of appeal, the undertaking on appeal, the original pleadings, the original maps and exhibits under stipulation, and the statement on motion for a new trial, composed of three volumes.

We come now to the consideration of the question of merit presented by the record. The record is voluminous, covering proceedings commenced in the district court on July 8, 1889, and finally determined by the order of the court denying appellants' motion for a new trial, made on the 11th day of December, 1897. The complaint was filed by the respondent against the appellants and a large number of other parties living along or upon the Humboldt river and its tributaries.

Among other matters, it was averred that the respondent and his grantors had owned and possessed, for twenty-six years and more last past, 5,000 acres of land situated in Humboldt county, Nevada, and also the right to use, for irrigating the same, and for watering stock, and for domestic purposes, 20,000 inches of the flow, measured under a four-inch pressure, of the Humboldt river; that he had owned and possessed the said land, and the right to use said water, during seven years' time and more last past, and at the time of commencement of said action owned and possessed the land and the right to use said water for the said purposes, and that the use of said water for the purpose during said

times had been necessary, and was at the commencement of said action necessary, and must continue thereafter to be necessary, for the just, profitable, or remunerative enjoyment, use or cultivation of said lands; that the respondent and his grantors, during all of said twenty-six years and more, under a *bona fide* claim of right so to do, by prior appropriation, did use for irrigating purposes, and for irrigating said lands, and for watering stock, and for domestic purposes, all of said portion of said stream adversely to all persons, peaceably and without let or hindrance whatever, except that, since the month of March last past, the defendants have interrupted the respondent's use thereof; that on the 1st day of April, 1889, and since that time, the defendants have diverted the water from the stream without the consent of plaintiff, and have maintained, and did at the time of the commencement of the action maintain, in said stream and its tributaries, dams and obstructions to the flow of said water, thereby diverting the water away from the dams, ditches and other appliances of the respondent whereby the land of the respondent had been irrigated, so that the water was entirely lost to the plaintiff, and thereby interfered with the comfortable enjoyment and free use by the plaintiff of his said property; that the defendants threaten and intend to continue to maintain said obstructions in said stream, and to continue to divert said water and prevent plaintiff from using the same. The prayer was that said nuisance be abated, and the defendants be enjoined from diverting said waters away from the plaintiff.

On the 3d day of December, 1889, the appellant Grayson, by answer filed in said action, specifically denied the averments of the complaint, and, by way of affirmative matter, alleged that he was the owner in possession, and entitled to the possession, of about 16,000 acres of land situated upon the Humboldt river, in Eureka county, and that he and his grantors had been owners in possesion, and entitled to the possession, and engaged in the cultivation, and had enjoyed the use and benefit, of said land since 1873; that said land was agricultural and grazing, and adapted to the cultivation of crops of grain, vegetables and grass when irrigated, but without irrigation is of little value; that said land was

riparian land; that the Humboldt river flows through the
same, in its natural channel, and, during the months. of
March, April, May, June and July of each year, overflows
its banks and spreads over and naturally moistens and irri-
gates about 1,000 acres thereof, and produces crops of natural
grass thereon; that, as the owner of riparian land, he was
entitled to the rights and benefits of a riparian proprietor,
to make a reasonable use of the waters of said river flowing
through his land, to obstruct the same by dams put into the
river to change or enlarge or diminish the channel upon his
lands, and to use and consume a reasonable portion of the
waters of said river flowing through his land for watering
stock, and for domestic purposes, and for the irrigation of
crops of grain, vegetables and grass, and, as such riparian,
was entitled to preserve the channel of the river in its ancient
and natural state.

He further averred that, in April, 1877, his grantor appro-
priated, for stock and domestic and irrigating purposes, 7,200
inches of the waters of said river, measured as the same
flows in his ditch upon a grade of $\frac{1}{16}$ inches to the rod, and
ever since said date he and his grantors have been the owners,
and he is now the owner and entitled to have and use, for
stock, domestic and irrigating purposes, 7,200 inches of the
water of the river, measured as aforesaid, by right of prior
appropriation and necessity; that in June, 1883, defendants'
grantor appropriated, for the same purpose, 2,592 inches of
the waters of said river, measured as above set out, for the
same purposes, and upon like necessity, and by right of prior
appropriation; that in April, 1884, the defendants' grantor
appropriated, for the same purposes, and under like necessity,
6,048 inches; that in November, 1874, defendants' grantor, in
like manner and for like purposes, and under similar neces-
sities, appropriated 8,640 inches of the waters of said river;
that, for more than five consecutive years preceding the com-
mencement of this action, the said Grayson and his grantors
had appropriated and diverted and used, for like purposes,
24,480 inches of the waters of said river, measured in like
manner; that such diversion, appropriations and use were
under a claim of right, were open and notorious, peaceable,
uninterrupted and continuous, and were adverse to the plain-

tiff, and to his alleged right, and to all the world; that, in the years 1874, 1877, 1883 and 1884, the said Grayson and his grantors constructed dams on his land in the Humboldt river, and by that means raised and obstructed the waters, and caused the same to overflow upon his land, thereby irrigating the lands and the crops grown thereon, and thereby diverted and appropriated sufficient water to irrigate his lands and the crops grown thereon; and thereby and ever since has been, and is now, entitled to maintain said dams in said river, and to divert by means thereof a portion of the waters of said river out of its channel, and upon and over his lands, for the purpose of irrigating the same and the crops grown thereon; that, for more than five consecutive years preceding the commencement of the action, the defendant has maintained said dams in said river, and has thereby obstructed and raised the water flowing in said river, and caused the same to flow over and upon his land, and to irrigate the same and the crops thereon; that the construction and maintenance of said dams and the diversion and use of the water by the means thereof were under claim of right, were open, notorious, peaceable and uninterrupted and continuous during said time, and were adverse to the plaintiff, and to his alleged right, and to all the world; that the plaintiff ought not to maintain this action, for the reason that more than five years have elapsed since plaintiff's cause of action arose, and since defendant deprived the respondent and his lands of the water demanded in the complaint, and since the plaintiff or his grantors or predecessors were seized or possessed of said waters, or had the use or enjoyment of the same, and for the reason that the plaintiff's said action was barred by the statute of limitations.

The appellant Anderson, by answer filed December 19, 1889, alleged, practically, the same matters in form as set out in the answer of Grayson, differing only in dates, amount of land owned and possessed, and the number of inches appropriated.

On the 2d day of September, 1890, the appellants Grayson and Anderson and the defendant William Dunphy joined in a supplemental answer, in which it was averred that since the filing of the separate answers, and on the 2d day of Sep-

tember, 1890, on motion of the plaintiff, an order and judg-
ment was rendered by the court dismissing the above-entitled
action as to the original defendants, Crum, Layton, Pickett,
Chance, Egoff and Lemaire; that, as to the defendants dis-
missed at the time of the commencement of said action, they
have ever since been, and were then, diverting the waters of
the Humboldt river mentioned in the complaint, and using
the same for watering stock, irrigating land and preventing
the same from flowing down to the lands of the plaintiff, and
depriving the plaintiff of the use thereof, at various points
between the lands of defendants Dunphy and Grayson and
the lands of the plaintiff, and below the points of diversion
by said defendants; that at the time of the commencement
of the action, and at the time said action was dismissed as
to these defendants, and ever since, these defendants claim
and have an interest in the waters of Humboldt river and
the right to use and divert the same, for the purposes of irri-
gation and domestic purposes, in various quantities, set out
in the answer.

It was further alleged in the supplemental answer that, as
to the defendants to whom this action was dismissed, since
the 1st day of April, 1889, had diverted the waters from said
stream without plaintiff's consent, and had maintained, and
still continued to maintain, in said river and its tributaries,
dams and obstructions to the flow of said waters, which
divert the water from the plaintiff and his land, and that all
of said defendants claim the right to make such diversion.
It is further averred that the waters customarily flowing in
the Humboldt river are more than sufficient to supply the
requirements of the appellants, respondent, and the defend-
ant Dunphy.

This supplemental answer was verified and filed on the 2d
day of September, 1890. Subsequently, an additional sup-
plemental answer, verified and filed on behalf of William
Dunphy, the appellants J. B. Blossom, Ada H. McIntyre,
John B. Paul, and Kate Slavan, was filed, in which it was
alleged that, since the filing of the original answers on the
part of the defendants named, upon motion, and by agree-
ment and consent of the plaintiff, and without the consent
of these defendants, an order of the court was made dismiss-

ing the action as to the defendants, the Clover Valley Land and Cattle Company, the Golconda Land and Stock Company, Louis Lay, Thomas Nelson, George Bain, G. Gonzales, Robert Henderson, George Russell, and John Bradley; that the defendants above named had entered into an agreement and stipulation with the plaintiff, whereby they were permitted to withdraw their answers filed in the action, and substituted therefor new answers, consisting of denials merely; that such withdrawal and dismissal was made upon an agreement in writing to the effect that said answers should be withdrawn, and new answers substituted therefor, on condition that no judgment should be taken or entered in favor of the said plaintiff and against these defendants to the agreement, or either of them, and that the action should be dismissed without prejudice, and the plaintiff's cause of action survive for the period of three years from the date of said agreement.

It was further averred in this additional supplemental answer that the defendants to whom said action had been dismissed under said agreement had, during the years of 1888 and 1889, and at the time said action was commenced, and ever since then, maintained dams in the Humboldt river, between the lands of the respondent and the lands of the defendants joining in said supplemental answer, thereby obstructing and diverting a portion of the waters of the Humboldt river from flowing to the lands of the respondent. The separate answer of George Russell and John Bradley, and the separate answer of George Crum, and the separate answer of Thomas Nelson, and the separate answer of the Clover Valley Land and Stock Company, and the separate answer of J. B. Paul, all consisted, in effect, of a denial of the averments of the plaintiffs' complaint, and affirmative matter in defense thereof, under a claim of right to the use of said water by virtue of prior appropriations made by the various defendants, for the purposes of watering stock and for domestic and irrigation purposes.

As stated before, the appeal is from an order of the court denying appellant's motion for a new trial. The action seems to have been commenced upon a theory that the maintenance of the dams, under the conditions alleged by

the appellants, constituted a nuisance, and a prayer was made that it be abated, and the appellants enjoined from continuing the same. The suit was commenced in July, 1889, and decided in August, 1896. The testimony was taken in the fall of 1890 and the spring of 1891. On the 12th day of June, 1896, the court announced its decision, and on the 17th day of August, 1896, made its findings of fact and conclusions of law and decree in favor of the plaintiff. In due time the appellants gave notice of motion for a new trial, amendments were proposed to the same, the statement settled and engrossed, and certified by the judge, and the new trial denied on the 11th day of December, 1897.

The findings of fact were to the effect that, for twenty years prior to the commencement of the action, the respondent, and his grantors and predecessors in interest, had owned and possessed a certain tract of land consisting of 1,750 acres, referred to in the complaint, through which tract of land the Humboldt river ran, and that said river was a natural watercourse, through which have at all times flowed, in a natural channel, the waters thereof; that the respondent, for twenty years prior to the commencement of the action, and his grantors and predecessors, had owned and possessed the right to use, for the purpose of irrigation, watering stock and for domestic purposes, 14,000 inches of the waters of said river, measured under a four-inch pressure; that the use of said water upon said lands for said purposes during said times has been necessary, is yet necessary, and must so continue to be, for the just, profitable, remunerative enjoyment, use or cultivation of the land; that during said times the respondent and his grantors, under the claim of right so to do by prior appropriation, did use all of said 14,000 inches of water adversely to all persons, and from that time until the commencement of the action his use thereof had been to the same extent, except that during a period between the month of March, 1889, and the commencement of this action, " William Dunphy, named in the complaint, and defendants George W. Grayson and J. P. Anderson interrupted plaintiff's said use, as in these findings stated; that on or about the 1st day of April, 1889, and thereafter, up to the date of the commencement of this action, the said William Dunphy,

George W. Grayson and J. P. Anderson diverted all of the waters of said stream, without the consent of plaintiff, and maintained in said stream and its said channels dams and obstructions to the flow of said water, which dams and obstructions were, during the period between March, 1889, and the date of the commencement of this action, by said William Dunphy and the defendants last named, so maintained in said stream and channels that all the waters of said stream, and every part of said 14,000 inches thereof, then flowing in said stream and channels, were diverted away from the dams, ditches and other appliances of the plaintiff, whereby the said tract of plaintiff's land had been, prior to said period last above referred to, irrigated, and whereby during said period said tract ought to have been irrigated; that during the period between March, 1889, and the date of the commencement of this action, large and appreciable quantities of said waters of said stream flowed therein, and in the channels thereof, which were wholly diverted, as in these findings stated, by said dams and obstructions, as so maintained by said William Dunphy, George W. Grayson and J. P. Anderson; that during said last specified period they so maintained said dams and obstructions in said stream and channels that all the waters of said stream were thereby diverted away from the said dams, ditches and appliances of plaintiff, and the whole of the waters of said stream, including every part of said 14,000 inches, then flowing in said stream and channel, were entirely lost to the plaintiff, and he was thereby wholly deprived of the use thereof, and that thereby the said William Dunphy, George W. Grayson and J. P. Anderson did, during that period, interfere with the comfortable enjoyment and free use by plaintiff of his property aforesaid."

It is further found that the defendants threatened and intended to continue to maintain their dams, and to continue to divert the waters, and prevent plaintiff from using any part of the same; "that long prior to any use or appropriation of any of the waters of said stream by said William Dunphy, George W. Grayson and J. P. Anderson, or either of them, or their or either of their grantors, the plaintiff and his grantors" had used and appropriated, for

the purposes named, 14,000 inches of water, and that he and his grantors had so used the same for beneficial purposes, and that since April, 1889, he was and has been the owner of all the lands described; that neither of the defendants had ever owned or possessed or claimed said lands or any part thereof. Other findings were made, which, for the purposes of this case, are not necessary to be quoted. Upon these findings the court concluded that the dams and obstructions of the appellants were a nuisance, the same should be abated, and that the appellants should be restrained from diverting the water thereby, and judgment was entered accordingly.

The proper order had been made by the court, substituting Carmen U. Dunphy and Jennie C. Dunphy as parties to said action in the place of William Dunphy, deceased.

It will be observed that the respondent sought by his complaint to have the dams and obstructions, maintained in the Humboldt river by the appellants and their codefendants, abated as nuisances, and the diversion of the waters thereby enjoined, based upon an alleged violation or invasion of his rights to the use of 20,000 inches of said water for certain beneficial purposes, under prior appropriation and use alleged to have been for many years adverse to the appellants and their codefendants. The separate answers of the appellants and their codefendants in effect deny all the material averments of the complaint, and affirmatively show rights to the use of specified quantities of the waters of said stream under prior appropriations thereof for beneficial purposes, and ask the court to find and decree to each the specific quantity claimed for the purposes claimed and in the manner claimed.

It is further shown by the supplemental answer of the appellants and their codefendant, Dunphy, that certain of the other defendants to the action, as to whom the action was dismissed, claimed, each for himself, certain specified quantity of the water, by appropriation for beneficial purposes, which rights were subordinate to the rights of the answering defendants; that the defendants were, at the time of the alleged invasion of respondent's right, and ever since had been, maintaining obstructions and dams in the Humboldt river, thereby diverting the waters. It is shown by the

answer of John R. Bradley and George Russell, and by the answers of a number of the other defendants, that each was maintaining obstructions and dams in the river above the lands of the respondent, by which each was diverting the waters under a claim of right to so do, alleged to be superior to the respondent's right. In other words, it is shown by the verified pleadings of the appellants, and some of their codefendants, that each was diverting the waters of the river, in the manner alleged, for beneficial purposes, under claim of right to so do by appropriation and use. Before the decision was rendered, and after the trial, it appears from the record, that the court, by order, dismissed all the defendants from the action except these appellants and Jennie C. and Carmen U. Dunphy, executrices, over the objection of appellants, and they assign this action of the court as one of the grounds of error.

The court, in its findings and decision, treated the action as one to abate and enjoin a nuisance. It is clearly shown by the answers of the defendants that, at the time of the wrongful diversion, each was maintaining dams and obstructions in the Humboldt river, and thereby diverting its waters, under claim of right to the same for beneficial purposes by actual appropriation. The evidence without dispute shows that some of the defendants to whom the order of the court applied were, at the time of the diversion complained of, holding back and diverting a large volume of the water of the river, by means of dams and obstructions erected and maintained above the lands of the respondent, but there is absolutely no showing that such dams and obstructions were maintained, and such diversion thereby made, under claim of right to so do by appropriation or otherwise of any of the waters of the river, for any beneficial purpose whatever, as against either the claim of the respondent or the appellants. Not only is it shown by the answers of these defendants, and by the undisputed testimony adduced on the trial, that they were, at the time of the alleged diversions, and in the manner alleged, holding back and diverting the waters without any apparent right thereto, but the respondent's complaint in specific terms so charges.

In the absence of any statutory rule regulating matters of

this kind, it has been generally held that, in determining who should be parties to an action to abate and enjoin a nuisance, the rules governing proceedings in equity should apply; that a bill in equity would lie against those parties only who would be liable to respond in damages. (2 Wood on Nuisance, p. 1164; 2 High on Injunctions, sec. 1547.)

It has also been held that, in a bill to enjoin the diversion of water by tort feasors, there could be no objection to granting the relief, for the reason that one of the defendants resided beyond the jurisdiction of the court. (2 High on Injunctions, sec. 1564.)

It is also a well and reasonably established rule in equity that, if the defendants actually before the court may be subjected to undue inconvenience or danger of loss, or to future litigation, *or to a liability under the decree* more extensive and direct than if the absent parties were before the court, that, of itself, will furnish sufficient grounds to enforce the rule of making absent persons parties to the action. (Story, Equity Pleading (9th ed.) sec. 338.)

We have a statutory regulation which provides, in effect, that the court may determine any controversy between the parties before it, when it can be done without prejudice to the rights of others or by saving their rights; but, when a complete determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in. (Gen. Stats. 3039.) It will be observed that this statute practically adopts the rules of equity requiring all persons materially interested, either legally or beneficially, in the subject matter of the suit, to be made parties to the suit, when their rights will be affected by the final decree, and also the rule quoted above from Story's Equity Pleading. This court, in commenting on the above-cited provision of our statute regulating parties to actions, quotes with approval that section of Pomeroy's Remedies and Remedial Rights (section 419), wherein the author says that, "if there are other persons not parties whose rights must be ascertained and settled before the rights of the parties to the suit can be determined, then the statute is peremptory, and the court must cause such persons to·be brought in." (*Robinson* v. *Kind*, 23 Nev. 338.)

If, then, under the statute, it is the peremptory duty of the court to bring in such parties upon its own motion, and if such failure is reversible error, how much greater and stronger is the reason that the court should not dismiss the action as to persons already made parties and already brought in, upon the showing of the complaint and the answer and the evidence that their rights must be settled and determined before the rights of the appellant and respondent could be determined, where it is shown by the pleadings and evidence, as in this case, that the appellants may be subjected to undue inconvenience, danger of loss, future litigation, or liability under the decree, more expensive and direct than if these parties had not been dismissed from the action. These parties defendant were not only committing, and threatening to continue to commit, the act complained of, under the undisputed showing by the record in the case, but had been brought into court, and had submitted themselves to its jurisdiction. They were properly made parties, and were necessary parties, under the respondent's complaint, and under the averments of the answers, and the evidence conclusively shows that a full and complete determination of the controversy between the respondent and the appellants could not be made without their presence. It seems to us, under this showing, that they were indispensable parties, and that the action of the court was fatal error, and prejudicial to the rights of the appellants. This conclusion seems especially strong when it is shown by the record that the court could have found that the diversion of the water by the defendants to whom the action was dismissed was made at the time complained of, against the rights, not only of the respondent, but also against the rights of the appellants, and that the dams and the obstructions, and thereby the diversions of the water by these defendants, alone were against any right or claim of the respondent.

As above stated, the court treated the action, in its findings, conclusion and decision, as one brought simply to abate and enjoin a nuisance, but, on the hearing of questions of fact made by the pleadings, the action was treated by court and counsel as one in which the rights of the parties to the use of specific quantities of the water of the river for bene-

ficial purposes were to be determined.   There are some undisputed facts shown by the evidence, which have a direct bearing upon a decision of the questions to be determined under the assignment of errors, which we deem it necessary to set out in this part of the opinion.

It is shown that a large number of dams and obstructions, other than those of the appellants and their codefendants, Jennie C. and Carmen U. Dunphy, executrices, were maintained by the other defendants, and other parties, above the respondent's land, in the river, by means of which the waters of the river were held back and diverted during the time of the alleged invasion of the respondent's rights, and there is an absolute absence of any showing on the part of the defendants, other than these appellants and their codefendants, Jennie C. and Carmen U. Dunphy, that such dams and obstructions, and thereby such diversions of the water, were maintained or made under any claim of right thereto, by appropriation or otherwise.

The lands of the respondent are situated on the Humboldt river, about twelve miles above or easterly from Winnemucca. The lands of the appellant Grayson are higher up on the river, at or near Beowawe.   The lands of the appellant Anderson are on the river between the lands of Grayson and the respondent; the lands and dams of others of the defendants are between the lands of the respondent and the lands of Grayson.   It is further shown that many thousand more inches of water ordinarily flow in the channel of the river during the time of the alleged wrongful diversion than are claimed by the respondent and the appellants and their codefendants, Jennie C. and Carmen U. Dunphy.   It is further shown by the evidence that, for a great number of years before the commencement of the action, the respondent and the appellants appropriated and diverted, by dams and ditches and other means, certain specified quantities of said water for certain named beneficial purposes.

It is further shown that, in years of the ordinary flow, each of the appellants, their codefendants, Jennie C. and Carmen U. Dunphy, and this respondent, had all the water claimed under their respective acts of appropriation; that in the spring and summer of 1889, during the time of the

alleged wrongful acts, the amount of water flowing in the river was far below the ordinary quantity, and was not sufficient to supply the demands of those claiming the right thereto; that this small quantity flowing during the season named was the effect of natural causes. It is not shown just how many inches were in the river during this season. The irrigating season along the Humboldt river usually begins about the 1st of March and ends about the 1st of July in each year. Other facts, about which there is little or no controversy, will be referred to in the opinion as it may become necessary. It will therefore be seen, from these undisputed facts, that the appellants, as well as the respondent, have acquired a right to the use of the waters of the Humboldt river for beneficial purposes by the appropriation thereof by means of dams and ditches and other obstructions. It may be stated, as an undisputed fact, that the appropriation of the waters along the Humboldt river, and the use thereof, is not made in any other manner or by any other means than those indicated.

A "nuisance," in its ordinary signification, is anything that produces an annoyance—anything that disturbs or is offensive. In its legal sense, it applies to that class of wrongs that are caused by the unreasonable, unwarrantable, or unlawful use by a person of his own property, or from his improper, indecent, or unlawful conduct, which operates as an obstruction or injury to the right of another, or to the public, and producing such material annoyance, inconvenience, discomfort or hurt that the law will presume a consequent damage. It is true, as a general proposition, that every enjoyment by one of his own property, which violates the rights of another in an essential degree, is a nuisance. Such was the doctrine of the common law. (1 Wood on Nuisances, pp. 1, 2; 16 Am. & Eng. Ency. of Law, 924.)

The rule of the common law was practically adopted by our statute, for it is expressly provided that anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance, and subject to an action. (Gen. Stats. 3273.)

But not every use of one's property that works an injury

to the property of another will be declared a nuisance. Such was not the rule of the common law; neither do we believe it to be the rule under our statute. While injury and damages are essential elements of a nuisance, both at common law and under our statute, both may exist as the result of an act or thing, and yet the act or thing not be a nuisance. Every person has the reasonable enjoyment of his own property, and so long as the use to which he devotes it violates no rights of another, however much damage others may sustain therefrom, his use is lawful. (1 Wood on Nuisances, p. 3; *Thurston* v. *Hancock*, 12 Mass. 220; *Lasala* v. *Holbrook*, 4 Paige Ch. (N. Y.) 169.)

Neither does our statute change in any manner the remedies for this wrong as they existed at common law; as, by the same section, it is provided that an action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened, by the nuisance, to abate or enjoin the same. (Gen. Stats. 3273.)

Before the passage of that act, the party could maintain the same character of action. "The concurrent jurisdiction of courts of equity by the writ of injunction with courts of law, in cases of private nuisance, is ancient and well established." (High on Injunctions, sec. 740.)

"The foundation of the interference of equity in restraint of nuisances rests in the necessity of preventing irreparable mischief and multiplicity of suits. The principles governing courts of equity in the exercise of this jurisdiction are closely allied to those which control their action in restraining trespasses." (Id. sec. 739.)

Further, the foundation of the right to invoke the equity power of the court, in restraint of nuisances to water, before the enactment of our statute, was based almost solely upon the infringement of riparian rights. As incidental to the ownership of the adjacent soil, a riparian proprietor had an interest of an usufructuary nature in the water flowing past his land. This right being common to all owners of land adjacent to the stream, no proprietor could, in the absence of a right to the exclusive enjoyment, interfere in such manner as to injure adjoining proprietors. (High on Injunctions, sec. 794.)

Each riparian owner was entitled, in the absence of grant, license, or prescription, to have the stream flow in its channel without material diminution. He had no property in the flowing water, but might use it for any purpose to which it could be applied beneficially, without material injury to the rights of others. Nor was this right a mere easement or appurtenance, but was inseparably annexed to the soil. The ordinary use of the water, for supplying his natural wants, could be exercised to the extent of consuming all the water in the stream; but the extraordinary use thereof, such as for irrigation, could be made, but such use was inferior to the right of its ordinary use, and such extraordinary use must be reasonable. (Gould on Waters, sec. 204, *et seq.*)

In England and in this country, it has been held that a riparian proprietor has the right to divert waters for the purpose of irrigation, but the later decisions in both countries have been to the effect that such use does not supply a natural want, nor authorize an exclusive or undue appropriation by one proprietor; that such use must be reasonable, and not materially affect the application of the water by other riparian proprietors. (Gould on Waters, sec. 217.)

The same doctrine is stated in 1 Wood on Nuisances, p. 481, *et seq.* The conditions of this state, the demand and necessities of agriculture, mining, and milling, and the prosperity of its people, has entirely swept away this doctrine of riparian rights, as unsuited; and this court, by a line of decisions based upon the requirements of the state, its industries and necessities, has adopted a rule suited to those conditions and necessities. It is now the settled doctrine of this state that a person can acquire the right to use the waters flowing in a stream, for the purpose of irrigation, by appropriation as against riparian proprietors or other persons, the priority of rights of various claimants to the use thereof to be determined by the priority of time in making the various appropriations. (*Jones* v. *Adams*, 19 Nev. 78; *Reno S. & M. W.* v. *Stevenson*, 20 Nev. 269.)

It will be seen, therefore, that, under the rule controlling where the doctrine of riparian rights prevails, the diversion of waters for irrigation, by dams and obstructions, so as to materially diminish the flow thereof, was, as against a lower

riparian proprietor, who, as a matter of right, was entitled to have such water flow without material diminution, declared a nuisance, and could be abated or enjoined. The rule of law adopted by the courts of this state, and recognized at different times and by various acts of the legislature, and by the act of congress, regulating the rights to the use of water for beneficial purposes, and the exercising of such rights, has, to a very great extent, changed the rights of the parties to actions to abate or enjoin the diversion of water, as they existed under the doctrine applying to riparian proprietors. We do not mean to say, or intend that it shall be inferred, that the diversion of water by dams and obstructions in a stream, under the rule governing and regulating the use of water by appropriation as adopted in this state, could not, in a proper case, be declared a nuisance, and abated or enjoined; but where, as in this case, it is shown by the pleadings and established by the evidence that thousands of inches of water usually flowed in said stream in excess of any claim of right of respondent thereto, a *bona fide* claim of right to a part of which had been made by appellants in manner and form as required, and such right had been exercised and enjoyed by them peaceably and freely for a great number of years prior to any alleged invasion of respondent's rights, and the diversion alleged is shown to have been made in great part, at least, by other persons, by means of dams and obstructions in said stream, without any showing whatever by the evidence that they had or claimed any right to make such diversion, it was clearly error to conclude and decide that the dams of appellants were nuisances, even though the respondent was injured thereby. The appellants were exercising a lawful right, in a lawful manner, and applying the rule referred to in *Thurston* v. *Hancock, supra*, and *Lasala* v. *Holbrook, supra*, to the effect that every person has the right to the reasonable enjoyment of his own property, and so long as the use to which he devotes it violates no right of another, however much damage another may sustain therefrom, his use is lawful.

In other words, the only reasonable enjoyment or use to which the appellants' dams could be devoted or put was for those purposes for which they were constructed, and had been

so long used, and were then being used and enjoyed, and such use and reasonable enjoyment were lawful, and did not, under the law, constitute the same a nuisance.

To put the matter in another form: Both the respondent and appellants had equal right, under the law and the undisputed facts, to acquire rights to the use of waters for the same purposes and in the same manner. Each did acquire rights to the use of the water. Concede that the respondent had a prior right to 14,000 inches of the waters of the stream, would the exercise by the appellants of their right to a part of the waters, whereby a part of the 14,000 inches was diverted from respondent, thereby damaging him, be an unreasonable enjoyment of their property, and would the court as a matter of law be authorized to declare the appellants' dams nuisances by reason of such acts? If it had such authority, then it could declare the property a nuisance because it was used in a lawful manner, and in the only way in which it could be used or enjoyed by its owner.

It is therefore clearly manifest, under the rule of our law, that the maintenance of dams or other obstructions, for the purpose of diverting waters to be used for irrigation, and the diversion thereof for such purposes, so as to materially diminish the amount, or even consume the entire quantity flowing in a stream, is not of itself a nuisance, where it is shown that such dams and obstructions are maintained, and such diversion made, for a long number of years under a *bona fide* claim of right.

The respondent has a complete and ample remedy for the redress of the wrongs complained of, and any damages he may have sustained thereby, under other rules affording equitable relief, that are not repugnant either to the rule governing the appropriation of waters as adopted in this state, or to the conditions and necessities upon which the rule is based.

Many objections are urged against the findings of the court, but we do not deem it necessary to consider all. A reference to the findings as set out in this opinion shows that the court found, in direct terms, that the appellants and their codefendants, Jennie C. and Carmen U. Dunphy, executrices, diverted all the waters of the Humboldt river

during the times complained of. This finding is clearly against the evidence. It is shown, as an undisputed fact, that the defendant Blossom and other defendants diverted a large volume of the water of the river during said time, above the respondent's lands, by means of dams and other obstructions maintained below the lands of Grayson, and no showing whatever was made of any claim or right to make such diversions, as against the respondent or appellants.

A very serious question is raised as to the finding of the court that 14,000 inches of water were necessary to irrigate respondent's land, but, as the order appealed from will have to be reversed for the reasons heretofore assigned, we deem it unnecessary to pass upon this question.

The order denying appellants' motion for a new trial will be reversed, and the cause remanded for further proceedings in accordance herewith.

BELKNAP, J.: I concur.

BONNIFIELD, C. J., dissenting:

The appellants appeal from an order denying their motion for new trial alone. A new trial is a reëxamination of an issue of fact in the same court after trial and decision by a jury, court, or referee. (Gen. Stats. 3216.)

When the application for new trial is made upon the grounds of the insufficiency of the evidence to justify the verdict or other decision, or that it is against law, or error in law occurring at the trial, and excepted to by the party making the application, the application shall be made upon a statement prepared as provided by section 197 of the civil practice act. (Gen. Stats. 3218, 3219.)

Appellants' motion for new trial was made upon the above grounds. Said section 197, as amended by Stats. 1893, p. 88 (Gen. Stats. 3219), after specifying the mode of preparing the statement and its authentication, provides that, "on the argument of the motion reference may be made to the pleadings, depositions and documentary evidence on file, testimony taken and written out by a shorthand reporter authorized by the court to make the same, and the minutes of the court."

"The statement thus used, in connection with such plead-

ings, depositions, documentary evidence on file, testimony taken by a reporter, and minutes of the court as are read or referred to on the hearing [of the motion in court below], shall constitute, without further statement, the papers to be used on appeal from the order granting or refusing the new trial." The said statement in connection with the pleadings, depositions, etc., as are read or referred to on said hearing, constitute the statement on appeal. (*Caldwell* v. *Greely*, 5 Nev. 262; *White* v. *White*, 6 Nev. 24.)

It will be observed that it is not the pleadings, depositions, etc., simply on file in the case, but such pleadings, depositions, etc., as are read or referred to on said hearing of the motion in the trial court, in connection with said statement that constitute the statement on appeal.

"The statute has plainly and expressly declared what an appellant shall furnish this court to entitle him to a hearing; such matter must be before the court." (Id.; *Imperial M. Co.* v. *Barstow*, 5 Nev. 252.)

It is necessary that the issue of fact for which a new trial is asked be presented to the appellate court either by the statement by which the application for new trial is made, or by reading or referring to the pleadings on the hearing of the motion. If by the latter mode, it must be shown that the pleadings were so read or referred to. If they were neither read nor referred to, they did not become a part of the record on the motion in the court below.

"On an appeal from an order granting or refusing a new trial, the appellate court is confined in its investigation to the record used on such motion in the court below." (*Caldwell* v. *Greely*, 5 Nev. 262.)

The pleadings in this case are not embodied in the statement, nor are the issues of fact otherwise shown, or the pleadings shown to have been read or referred to on the hearing of the motion. The latter showing might have been made by the certificate of the judge to that effect. (*Simpson* v. *Ogg*, 18 Nev. 28.)

"A copy of the statement shall be annexed to a copy of the judgment roll, if the appeal be from the judgment; if the appeal be from an order, to a copy of such order." (Gen. Stats. 3358.)

A copy of the judgment roll is not to be annexed to a copy of the statement, unless the appeal be taken from the judgment. On an appeal from an order alone, the statement may contain all matter necessary for explanation of the grounds urged for a new trial. (*Corbett* v. *Job*, 5 Nev. 204.) It may, therefore, in such case, contain the pleadings, or the pleadings may be simply referred to on the hearing of the motion. In such case, it must be shown that they were so referred to.

I am of opinion that said statement on appeal in this case is radically defective, in that it does not embrace the pleadings or their substance, or show that they were read or referred to on the hearing of the motion in the court below. I am of opinion that such defect cannot be waived by the parties, or properly ignored by the court.

For the above reasons I think the appeal should be dismissed.