ARBY W. ALPER AND RUTH ALPER, HUSBAND AND WIFE,
APPELLANTS, *v.* WESTERN MOTELS, INC., A NEVADA
CORPORATION, RESPONDENT.

No. 5346

July 18, 1968                    443 P.2d 557

*Wiener, Goldwater & Galatz* and *J. Charles Thompson,* of
Las Vegas, for Appellants.

*Rudiak & Publow,* of Las Vegas, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

This case involves conflicting claims to the ownership of a 30-foot strip of land in Clark County extending along the east side of U.S. Highway 91 a distance of 220 feet, the entire width of the property on which is situated the Mirage Motel, and mutual allegations of trespass upon the disputed strip. Respondent is the owner of the Mirage Motel; appellants are the owners of an adjoining motel to the north. Appellants brought two actions, the first to quiet title and the second for trespass; after a consolidated trial, the district court found for respondent on all issues, declared it to be the owner of the strip, and awarded damages for appellants' trespass.

The question of ownership must be resolved first, for it is necessarily determinative of the allegations of trespass.

On January 1, 1952, Roland H. Wiley was the owner of a tract of land embracing both motel properties and the disputed strip. His patent from the United States extended westward to the section line which is the center line of U.S. Highway 91 and eastward from the section line 330 feet, but was subject to the reservation for highway purposes of a right of way extending 200 feet eastward from the section line. In 1950, the United States had agreed to relinquish the east 90 feet of this easement, but no document to this effect was recorded until June 20, 1958.

In January 1952, Wiley sold the south 110 feet of his tract to two brothers named Plewe for the disclosed purpose of erecting a motel. Wiley's deed to the Plewes described a parcel (hereinafter called Parcel A) 110 feet wide by 330 feet deep, "subject to the right of way for Highway 91." This deed was recorded.

The Plewes were then joined in their motel by one Dunn, and negotiated with Wiley for more frontage. Pursuant to these negotiations, Wiley, by deed executed March 28, 1952, conveyed to Western Motels, Inc., a corporation formed by the Plewes and Dunn, the parcel (hereinafter called Parcel B) immediately north of Parcel A, likewise described as 110 feet wide by 330 feet deep, "subject to the right of way * * * over * * * the most westerly portion." This deed was never recorded, nor was a deed by which the Plewes conveyed Parcel A by its original description to Western Motels, Inc.

It appears from the record that the Plewes and Dunn were also negotiating with a bank for a construction loan, and the next deeds may have been executed at the instance of the lender. Whatever the reason may have been, Wiley thereafter executed two deeds, one to the Plewes, designated as a "correction deed" covering Parcel A, and one to Western Motels, Inc., covering Parcel B, which respectively described each of these parcels as bounded on the west by a line 110 feet east from the section line. The Plewes then executed a deed conveying Parcel A by its "corrected" description to Western Motels, Inc. These three deeds were recorded on May 5, 1952.

In February 1959, appellant Arby W. Alper paid Wiley $2,000 for a quit-claim deed of the entire area 110 feet in depth from the section line to the east line of the right of way and 220 feet in width across the entire front of Parcels A and B. At the time of the transaction, Wiley disavowed any interest in the property.[1]

---

[1]From deposition of Roland H. Wiley taken at Las Vegas, Nevada, on February 17, 1966:

"Q. [by Mr. Rudiak] And how did he [Alper] contact you?

"A. [by Mr. Wiley] I was in the residence of my sister at 909 Taylor Street, North Las Vegas. I had never met Mr. Alper before this occasion. At that time he offered me a thousand dollars for some land that I owned on Highway 91. I told him that I didn't think I owned any. He said his attorney said that I did. He said, 'I will give you $1,000 for a quitclaim deed.' I said, 'You speak so quickly maybe you will give me $2,000.' He said, 'I will.' So I said, 'Well, bring it around sometime and I will sign it.' He said, 'Just happened to have it with me.' 'Well,' I said, 'let's go to lunch. You have to buy my lunch, then I will sign the deed.' We went to lunch. I signed the deed. He gave me his check and I cashed it and I told him I would give him a quitclaim deed to the White House for another $2,000."

On March 30, 1964, the Department of Highways of the State of Nevada relinquished the east 30 feet of its right of way along the entire section to "the property owners abutting" the right of way. It is this relinquished strip, in front of the Mirage Hotel, which now occupies Parcels A and B, that is claimed by both parties.

Appellants' claim must fail unless Wiley, after executing the second series of deeds, recorded on May 5, 1952, retained the servient estate in the 110-foot strip of land subject to the highway right of way.

In all of those deeds, the land conveyed to Western Motels, Inc. was bounded on the west by a line which coincided with the eastern edge of the highway right of way as delineated by the 1950 agreement.

It is the general rule that when a grantor who owns to the center of a public way conveys his land as bounded by the edge of the right of way, whether or not he describes the boundary as being such edge, the grant carries with it the grantor's servient estate in the right of way as well. City Motel, Inc. v. State ex rel. Dep't of Hwys., 75 Nev. 137, 336 P.2d 375 (1959). A contrary intention will defeat the rule, Dexter v. Riverside & Oswego Mills, 15 N.Y.S. 374 (1891), but this court has said that it will presume an intent on the part of a grantor not to retain title to such a narrow strip. Peterson v. City of Reno, 84 Nev. 60, 436 P.2d 417 (1968). None of the exceptional circumstances which have sometimes led to a contrary result are present here. See, for example, Cities Service Oil Co. v. Dunlap, 100 F.2d 294 (5 Cir. 1938), rev'd on another ground, 308 U.S. 208 (1939); Huff v. Hastings Exp. Co., 63 N.E. 105 (Ill. 1902).

On the contrary, the record contains ample testimony by the parties to the deeds in question from which the trial court could and did find their intent to *include* Wiley's servient estate in the highway right of way with his conveyance of the adjoining land. We hold, therefore, that the trial court correctly declared title to the 30-foot strip to be in respondent Western Motels, Inc. This being so, respondent could not trespass upon the land in question, but appellants did, and the trial court properly awarded damages to respondent.

The only question remaining concerns the amount of these damages. Appellants' trespass consisted of dumping gravel

upon the disputed strip. Appellants have not questioned the $96 award to respondent as compensatory damages, based on the cost of having this gravel removed. Respondent claims that, through the error of its counsel, who prepared the findings without access to the trial transcript, the trial court was misled as to the full extent of compensatory damages. The costs of replacing the shrubs and repairing the water line and road lights damaged by the dumping of the gravel were not awarded. The uncontradicted testimony is that the damages in this regard were $75 to $80. Respondent has asked that $75 be added to the $96 award of compensatory damages. This request would seem to be in the nature of a cross assignment of error, and "this court may, in a proper case and in the exercise of its discretion, consider cross assignments of error made by the respondent." Leonard v. Bowler, 72 Nev. 165, 171, 298 P.2d 475, 478 (1956). Appellants have not objected to this procedure. We therefore find that the respondent is entitled to an additional $75 in compensatory damages.

Appellants strongly object to the amount of $1,500 awarded as punitive damages, on the ground that it is grossly disproportionate to the amount of compensatory damages, even as adjusted by this court. We do not agree.

More is latent in the record concerning the relationship of the parties than is revealed by the title of this case. After the Plewes and Dunn had constructed their motel, they sold it to a couple named Rosoff. Appellant Arby W. Alper is Mrs. Rosoff's brother. Arby Alper examined the Mirage Motel property for the Rosoffs, counseled and supervised the erection of an elevated outdoor swimming pool as a distinguishing landmark, and upon Mrs. Rosoff's suggestion effectuated his declared intention to move from New York to a warmer climate by purchasing the adjoining motel. Afterward, relations between the relatives became bitter. Thereafter, Arby Alper acquired his claimed interest in the disputed strip, and the record contains testimony to his threat to harass his sister and her husband far beyond the deposit of gravel.

The trial court had the parties and other witnesses before it, judged their demeanor, and made its findings. This case was tried without a jury. In such a case, this court has already held that if there is sufficient competent evidence to support a finding, the appellate court will presume that the trial court disregarded any inadmissible evidence which was in fact admitted, and relied on the competent evidence. Alamo Airways, Inc. v.

Benum, 78 Nev. 384, 374 P.2d 684 (1962). Similarly we may assume here that the trial court acted without passion or prejudice and relied upon competent evidence to find malice sufficient to sustain its award.

In this State, punitive damages are not required to bear any particular proportion to compensatory damages. Miller v. Schnitzer, 78 Nev. 301, 371 P.2d 824 (1962). Appellant cites the cases collected at 17 A.L.R.2d 548–549 as standing for a rule of reasonable proportion, but an examination of these cases shows that what is "reasonable" in each instance depends on the circumstances. Porter v. Funkhouser, 79 Nev. 273, 382 P.2d 216 (1963), which respondent prematurely concedes to follow this rule, holds only that where punitive damages amounted to one-seventh of the compensatory damages, they were "minimal." In Finney v. Lockhart, 217 P.2d 19 (Cal. 1950), punitive damages of $2,000 as against $1 of compensatory were sustained.

Especially where we consider that respondent's motel, the access to and attractiveness of which were threatened, had an appraised value of $422,300, we find no reason to hold that the trial court abused its discretion in assessing punitive damages.

The judgment, as modified in this opinion by the addition of $75 in compensatory damages, is affirmed.

THOMPSON, C. J., COLLINS, ZENOFF, and BATJER, JJ., concur.