MIDWEST SUPPLY, INC., Doing Business as H & R
BLOCK COMPANY, and H & R BLOCK COMPANY,
a Nevada Corporation, Appellants, *v.* PATRICK
H. WATERS and LUCILLE C. WATERS, His Wife,
and WALLACE D. WATERS and MARGARET L.
WATERS, His Wife, Respondents.

No. 6772

May 30, 1973                                510 P.2d 876

[Rehearing denied June 20, 1973]

*Vargas, Bartlett & Dixon,* and *Frederic R. Starich,* of Reno,
for Appellants.

*Seymour H. Patt,* of Reno, for Respondents.

## OPINION

By the Court, GUNDERSON, J.:

In this action for damages allegedly caused by false and fraudulent representations of tax expertise, the jury favored respondents with a verdict for compensatory and punitive damages. On appeal, appellants contend (1) that there was no evidence to justify a jury instruction relating to fraud; (2) that the verdict for punitive damages improperly exceeded the amount claimed in the prayer of respondents' original complaint; and (3) that the jury was activated by passion and prejudice in its award of punitive damages.

These contentions have no merit.

Attracted by public advertisements, respondents contacted appellants in 1966 to ascertain if they might file amended personal and partnership income tax returns, reallocating to respondents Wallace Waters and Margaret Waters a larger share of an investment tax credit from business equipment purchased in 1964. In February of 1967, appellants prepared for respondents original tax returns for 1966, and nine amended tax returns for 1963, 1964, and 1965. Such returns claimed refunds for taxes previously paid. Although the amended returns showed that the partnership had disposed of

the business equipment in 1965, the refund claims were predicated on investment tax credit attributable to that equipment.

At the time, the Internal Revenue Code required repayment of any investment tax credit previously claimed, if the equipment was not retained for the prescribed qualifying period. Hence, after respondents improperly received refunds that appellants erroneously caused them to claim, an Internal Revenue Service audit resulted in assessment to respondents of additional taxes. Enforced collection procedures for these additional taxes, including the filing of tax liens, and numerous levies on wages and bank accounts, caused severe hardship to respondents.

1.  Appellants contend the trial court erred in instructing the jury as to fraud because there was no evidence that appellants intentionally misled respondents when undertaking to prepare their tax returns. We disagree. The record contains evidence of willful and wanton misrepresentations, in appellants' advertising and in their internal business practices, specifically aimed at deceiving the members of the public who might rely on appellants for tax expertise.

In their public advertising, appellants "guaranteed accurate tax preparation," stating that they would prepare "complete returns—$5 up." Thereby, appellants suggested their employees' expertise in preparing all types of tax returns. Despite this, they made no effort to hire employees with even rudimentary skill in accounting or in the preparation of tax returns. Appellants sometimes administered to new employees a 72-hour course in tax return preparation, but apparently even this minimal training was not a prerequisite to serving the public. The temporary employee who prepared respondents' tax returns had been employed in construction work for several years prior to his employment with appellants, and had received no formal training in the preparation of tax returns, either prior to or during his employment with appellants.

Appellants' manual instructed their office managers to counter inquiries concerning the qualifications of employees by saying that "[the company] has been preparing taxes for 20 years." The manual further instructed office managers not to refer to an employee as a "specialist or tax expert," but never to correct news reporters or commentators if they referred to employees in this manner.

In our view, such evidence supports a determination of fraud. "The suppression of a material fact which a party is

bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such fact does not exist." Villalon v. Bowen, 70 Nev. 456, 467, 273 P.2d 409, 414 (1954).

2. Appellants urge that the award of punitive damages was erroneous because it exceeded the amount set forth in the prayer of respondents' original complaint. Again, we disagree; for "the prayer for relief, except in the case of a judgment by default, does not limit recovery; and is not a part of the claimant's cause of action." 2(A) J. Moore, Federal Practice § 8.18, at 1805 (2d ed. 1972).

When the jury returned its verdict, the trial court allowed amendment of the pleadings to increase respondents' prayer for punitive damages. This unnecessary act cannot be deemed to prejudice appellants. Cf. Wendy v. McLean Trucking Co., 279 F.2d 958 (2d Cir. 1960).

3. Finally, appellants contend the jury's award of $100,-000 punitive damages was actuated by passion and prejudice.

Our law authorizes punitive damages in proper cases to punish and deter culpable conduct. Miller v. Schnitzer, 78 Nev. 301, 371 P.2d 824 (1962); NRS 42.010.[1] The amount appropriate to these purposes, which lies in the discretion of the court, need bear no fixed relationship to the compensatory damages awarded. Alper v. Western Motels, Inc., 84 Nev. 472, 443 P.2d 557 (1968); Gerlach Live Stock Co. v. Laxalt, 52 Nev. 191, 201, 284 P. 310, 313 (1930). At trial, appellants' net worth was established at six million dollars. The jury was properly instructed, and under the circumstances of this case, we do not find the jury's award of punitive damages excessive. Cf. Miller v. Schnitzer, supra; cf. Wells, Inc. v. Shoemake, 64 Nev. 57, 74, 177 P.2d 451, 460 (1947).

The judgment is affirmed.

THOMPSON, C. J., and MOWBRAY, BATJER, and ZENOFF, JJ., concur.

---

[1] 42.010 *Cases in which exemplary, punitive damages may be awarded.* In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.