NEVADA CEMENT COMPANY, AND CENTEX CORPORATION, APPELLANTS, *v.* HAROLD L. LEMLER, ET AL., RESPONDENTS.

No 6897

October 15, 1973          514 P.2d 1180

[Rehearing denied December 12, 1973]

*Vargas, Bartlett & Dixon,* and *John C. Renshaw,* of Reno, for Appellants.

*Echeverria and Osborne,* of Reno, for Respondents.

## OPINION

By the Court, BATJER, J.:

This appeal challenges the award of general compensatory and punitive damages to 85 plaintiffs who suffered discomfort and annoyance from a temporary nuisance maintained by the

Nevada Cement Company, a wholly owned subsidiary of Centex Corporation.

Following a lengthy trial, the court determined that 35 of the 85 plaintiffs incurred special damages in varying amounts totaling $40,298.31. This determination is not questioned. Neither do the appellants dispute their liability to compensate the plaintiffs for the discomfort and annoyance suffered by each of them. The appellants, however, do contend that an identical compensatory damage award of $5,000 to each of the plaintiffs (total, $425,000) who were differently situated cannot stand. Moreover, they urge that there is not a suitable foundation upon which to find malice in fact [NRS 42.010; Nevada Credit Rating Bureau, Inc. v. Williams, 88 Nev. 601, 503 P.2d 9 (1972)] which would justify an award of punitive damages in any amount.

In 1964, Nevada Cement constructed a single kiln cement plant near Fernley, Nevada to utilize deposits of limestone in that area. When operation was commenced at Kiln No. 1, there had been installed a primary filtration system and a bag house for secondary filtration. This process was apparently efficient and its operation is not questioned in this case. In September of 1969, construction of a second kiln was completed and it was put into operation. When first installed, Kiln No. 2 had a primary filtration system which removed approximately 85 percent of the dust generated by the cooking process, but unlike Kiln No. 1 it had no secondary filtration equipment.

The appellants contended that they had plans for a secondary filtration process but instead of installing a bag house system similar to Kiln No. 1, they desired to install an electrostatic precipitator. Their witnesses testified that the most efficient method of designing such a precipitator would be to collect data from the kiln under actual operating conditions. From September 1969 until March 1971 the appellants were emitting an average of 27,000 pounds of dust into the air each day. In May of 1970, the Commissioners of Lyon County filed suit to abate the dust emissions. On September 29, 1970, the Honorable Roscoe Wilkes, District Judge, in the case of Lyon County v. Nevada Cement Co., No. 5132, found "That Kiln No. 2 was emitting quantities of dust, that the dust caused damage to painted surfaces and possibly aggravated the problems of those residents who were particularly susceptible to sinus and respiratory problems . . . and that the dust emissions did constitute a nuisance. . . ." That court also found "that an abrupt cessation of operating Kiln No. 2 would result in the immediate termination of employment of approximately 37

men and would thereby create a severe economic hardship to those employees, their families, to Nevada Cement Company, the businessmen of Fernley, Nevada, and supplies to Nevada Cement Company. For example, Southwest Gas Company would lose approximately $296,145 during a nine month shutdown of Kiln No. 2 with a resultant danger of employee termination by this company. Sierra Pacific Power Company would likewise be damaged with resultant employee termination."

Consequently, the court in the Lyon County case No. 5132 exercised its discretion, balanced the equities, and concluded that the shutting down of Kiln No. 2 would impose hardships in excess of any benefit to be derived by the residents of Lyon County. Cf. Koseris v. J. R. Simplot Company, 352 P.2d 235 (Idaho 1960); Riter v. Keokuk Electro-Metals Company, 82 N.W.2d 151 (Iowa 1957); Smith v. City of Ann Arbor, 6 N.W.2d 752 (Mich. 1942); Smith v. Staso Milling Co., 18 F.2d 736 (2d Cir. 1927). That court, therefore, granted to Nevada Cement a period of six months from October 1, 1970 to April 1, 1971, within which to correct the emissions from Kiln No. 2, and granted a temporary injunction effective April 1, 1971, if the nuisance was not by then abated. Nevada Cement installed an electrostatic precipitator before April 1, 1971. The nuisance was abated within the time allowed by that court.

1. It is entirely proper to order the payment of damages to compensate for discomfort and annoyance caused by a temporary nuisance. Kornoff v. Kingsbury Cotton Oil Company, 288 P.2d 507 (Cal. 1955). See also: Jezowski v. City of Reno, 71 Nev. 233, 286 P.2d 257 (1955); Bliss v. Grayson, 24 Nev. 422, 56 P. 231 (1899); Annot. 142 A.L.R. 1307. In this case, however, the record is clear that some of the plaintiffs were considerably annoyed, while others were only minutely disturbed. Some of them lived near the cement plant, and others were miles distant. Some were within prevailing wind patterns and others were not. Some incurred special damages and others did not. Since the purpose of a general damage award is to compensate the aggrieved party for damage actually sustained, an identical award to multiple plaintiffs who are dissimilarly situated is erroneous on its face. In the light of the evidence, their annoyance and discomfort could not have been the same. Consequently, we perceive no rational basis upon which to affirm an award of $5,000 to

each of them. There must be a redetermination by the trial court of the general compensatory damages.

2. Here the trial judge concluded that the acts of the appellants amounted to malice and he assessed punitive damages against them. A plaintiff is never entitled to punitive damages as a matter of right, their allowance or denial rests entirely in the discretion of the trier of fact. Bille v. Manning, 210 P.2d 254 (Cal.App. 1949); Brewer v. Second Baptist Church of Los Angeles, 197 P.2d 713 (Cal. 1948); Finney v. Lockhart, 217 P.2d 19 (Cal. 1950); Precision Plating & M. Fin., Inc. v. Martin-Marietta Corp., 435 F.2d 1262 (5th Cir. 1970). NRS 42.010[1] provides that punitive damages are recoverable where the defendant has been guilty of oppression, fraud or malice expressed or implied. That statute was first enacted in the State of Nevada in 1965 and is verbatim with California Civil Code, Sec. 3294, which was first enacted in 1872 and has not been amended since 1905. The cases decided in that jurisdiction have interpreted that the malice contemplated by that section is malice in fact and that the phrase "express or implied" has reference only to the evidence by which malice is established. Davis v. Hearst, 116 P. 530, 538 (Cal. 1911); Wolfsen v. Hathaway, 198 P.2d 1 (Cal. 1948); Sturges v. Charles L. Harney, Inc., 331 P.2d 1072 (Cal.App. 1958). In Nevada Credit Rating Bureau, Inc. v. Williams, supra, we adopted the applicable principles, as set out in 14 Cal.Jur.2d, Damages, § 176.

Malice in fact must be established by the evidence if it is the ground relied upon to support an award of punitive damages. Gombos v. Ashe, 322 P.2d 933 (Cal.App. 1958). Here it is asserted by the appellants that the award of punitive damages was legally erroneous and impermissible because no actual malice was shown in the record as required by NRS 42.010. Malice in fact, sufficient to support an award of damages within the scope of NRS 42.010, "may be established by a showing that the [appellants'] wrongful conduct was willful, intentional, and done in reckless disregard of its possible

---

[1]NRS 42.010: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, expressed or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake or example and by way of punishing the defendant."

results." Toole v. Richardson-Merrell, Inc., 60 Cal.Rptr. 398 (Cal.App. 1967). Nevada Credit Rating Bureau, Inc. v. Williams, supra.

The trial judge found that the conduct of the appellants constituted oppression, wanton disregard for the rights and properties of the respondents and amounted to legal and express malice.[2] The appellants seriously contend that because the district judge concluded that the acts of the appellants only amounted to "legal malice and express malice" and not "malice in fact" that the requirements of Gombos v. Ashe, supra, and other California cases, as well as our recent decision in Nevada Credit Rating Bureau, Inc. v. Williams, supra, had not been met. The record supports a finding of malice in fact. The appellants' wrongful conduct was "willful, intentional, and done in reckless disregard of its possible results." Their conduct was not simply accidental or negligent. They knew from the outset that a large volume of dust was being discharged to fall upon the countryside, yet their Kiln No. 2 was intentionally operated for the entire nineteen months with apparent disregard for the possible results. This conduct provided the requisite malice in fact and warranted the trial judge in assessing punitive damages.

As in the matter of general compensatory damages, the assessing of punitive damages is wholly subjective. There are no objective standards by which the monetary amount can be calculated. The concept of punitive damages rests upon a presumed public policy, to punish a wrongdoer for his act and to deter others from acting in similar fashion. Miller v. Schnitzer, 78 Nev. 301, 371 P.2d 824 (1962). Ideally the punitive allowance should be in an amount that would promote the public interest without financially annihilating the defendant. By way of limitation the award must not be given under the influence of passion or prejudice (NRCP 59(a); see Miller v. Schnitzer, supra), and the wrongdoer may be punished, but not destroyed.

Evidence was received relevant to the financial status of the

[2]In his conclusions of law, Judge Waters said:
"6. That continuing to operate Kiln Number 2 without secondary filtration for a period of 19 months with full knowledge that for each barrel of cement produced, 9 lbs. of cement dust would be spewed out into the atmosphere over the neighbors of defendants, constitutes oppression.
"7. That such acts were done with wanton disregard for the rights and properties of others and constitutes legal malice and express malice."

appellants. Although there is some dispute between the parties over the appellants' net worth, it is obvious that they would not be financially ruined by the award even if we accept their contention that the net worth of Centex Corporation at the time of trial was only $28,142,188.

The appellants have pointed to nothing that was said or done by Judge Waters and we have found nothing that would indicate that he was biased or prejudiced against the appellants, and it does not appear that the award of punitive damages was given under the influence of passion or prejudice. As in the matter of an award of general compensatory damages, the mere fact that the punitive award is large is not conclusive that it is the result of passion or prejudice. Schatz v. Devitte, 75 Nev. 124, 335 P.2d 783 (1959); Wells, Inc. v. Shoemake, 64 Nev. 57, 177 P.2d 451 (1947); Burch v. Southern Pacific, 32 Nev. 75, 104 P. 225 (1909); Forrester v. S.P. Co., 36 Nev. 247, 134 P. 753 (1913); Christensen v. Floriston P. Co., 29 Nev. 552, 92 P. 210 (1907). Nonetheless, the trial court must reevaluate the amount of the punitive damages to be awarded not only in the light of any ultimate adjustment which may be made in the amount of general compensatory damages, but also in light of the order entered by Judge Wilkes in the case of Lyon County v. Nevada Cement Co., Lyon County No. 5132 (1970), which authorized the appellants to operate Kiln No. 2 for a period of six months without abatement.

This case is remanded to the trial court for a redetermination of general compensatory damages for discomfort and annoyance and for a redetermination of the amount of punitive damages. The redeterminations may be made on the record as it stands with whatever assistance the trial court desires from counsel for the parties. The judgment of $40,298.32 for special damages is affirmed.

Mowbray, Gunderson, and Zenoff, JJ., concur.

Thompson, C. J., dissenting in part:

I agree that an identical compensatory damage award of $5,000 to each of the 85 plaintiffs (total, $425,000) who are dissimilarly situated is erroneous on its face and cannot stand since, in the light of the evidence, their annoyance and discomfort could not have been the same. However, I depart from the majority view that punitive damages in some amount

may be justified. There simply does not exist a suitable foundation upon which to find malice in fact [NRS 42.010; Nevada Credit Rating Bureau, Inc. v. Williams, 88 Nev. 601, 503 P.2d 9 (1972)] to justify an award of punitive damages in any amount, let alone the enormous sum of $1,400,000 levied against the defendants by the trial court.

Kiln No. 2 of the Nevada Cement Company near Fernley, Nevada, was in operation from September 5, 1969, to March 31, 1971, without adequate dust control equipment. In May 1970, Lyon County filed suit to abate the nuisance. In that case the court found that the emissions from Kiln No. 2 "while creating problems is not overwhelmingly serious, though aggravating, annoying, and to a degree damaging." That court also found "that an abrupt cessation of operating Kiln No. 2 would result in the immediate termination of employment of approximately 37 men and would thereby create a severe economic hardship to those employees, their families, to Nevada Cement Company, the businessmen of Fernley, Nevada, and suppliers to Nevada Cement Company. For example, Southwest Gas Company would lose approximately $296,145 during a nine month shutdown of Kiln No. 2 with a resultant danger of employee termination by this company. Sierra Pacific Power Company would likewise be damaged with resultant employee termination."

As noted by the majority opinion "the court in the Lyon County case exercised its discretion, balanced the equities, and concluded that the shutting down of Kiln No. 2 would impose hardships in excess of any benefit to be derived by the residents of Lyon County. Cf. Koseris v. J. R. Simplot Co., 352 P.2d 235 (Idaho 1960); Riter v. Keokuk Electro-Metals Co., 82 N.W.2d 151 (Iowa 1957); Smith v. City of Ann Arbor, 6 N.W.2d 752 (Mich. 1942); Smith v. Staso Milling Co., 18 F.2d 736 (2d Cir. 1927). That court, therefore, granted to Nevada Cement a period of six months from October 1, 1970, to April 1, 1971, within which to correct the emissions from Kiln No. 2, and granted a temporary injunction effective April 1, 1971, if the nuisance was not by then abated. Nevada Cement installed an electrostatic precipitator before April 1, 1971. The nuisance was abated within the time allowed by that court."

The court order in the Lyon County case provides insulation against the claims for punitive damages in the instant action and precludes a finding of malice in fact on the part of Nevada Cement. Cases elsewhere appear to suggest that it is improper to apply the doctrine of balancing conveniences to a situation

where the acts complained of are willfully tortious. Stuart v. Lake Washington Realty Corporation, 92 S.E.2d 891 (W.Va. 1956); Wright v. Best, 121 P.2d 702 (Cal. 1942); Bourne v. Wilson-Case Lumber Co., 113 P. 52 (Ore. 1911). The converse of that proposition must be that if a court does apply that doctrine and declines to abate the nuisance forthwith, the conduct of the defendant must be deemed without sufficient malice to justify punishment therefor. Compensation for actual damage sustained would be in order, but not punishment, since the court by its decree has authorized the continuation of the nuisance for a limited period of time.

Of course, the Lyon County decree is not res judicata of the issue of punitive damages. It does, however, bear directly and forcefully upon the motivation of the cement company. To hold otherwise would place Nevada Cement in an intolerable position. The law must not be allowed to rule in one case that "the community needs your business, we will not abate it forthwith, you may continue"—and, in the other case, "but you will be soundly punished if you do so."

Quite aside from the Lyon County decree, the record may not reasonably be read to show malice on the part of Nevada Cement. The company started operating the second kiln in September 1969. It was equipped with a primary filtration system which removed approximately 85 percent of the dust. Plans had been made to add an electrostatic precipitator to remove a greater percentage of the dust. However, the company wished to conduct necessary tests under normal production conditions before designing and installing the precipitator, in order to determine essential requirements therefor. The tests were run and the results thereof were submitted to the company in December 1969. The company immediately drew up preliminary bid specifications and mailed them to prospective builders of the precipitator.

At that point in time, local and state emission standards were nonexistent. Meetings had been held by officials of Nevada Cement with the County Commissioners and state representatives to discuss emission standards, and final design of the precipitator was withheld pending adoption of appropriate regulations. Not until the end of May 1970 did it become clear that the state regulations to be promulgated would require the precipitator to be 99 percent effective. Final specifications for the precipitator were then prepared and a contract let for its construction and installation in June 1970. The precipitator was installed and in operation in May 1971, ten months after

final specifications were known. Installation within ten months was a rapid installation according to the record.

This course of conduct cannot reasonably be construed to denote malice in fact warranting punishment. The award of punitive damages should be stricken from the judgment.