CARVER CAPLE, Appellant, v. RAYNEL CAMPERS, INC., and JOSEPH C. CROUCHET, Respondents.

No. 7241

September 18, 1974                    526 P.2d 334

*David Abbatangelo* and *John E. Stone,* of Las Vegas, for Appellant.

*John H. Pilkington,* of Las Vegas, for Respondents.

## OPINION

By the Court, ZENOFF, J.:

In January of 1971 Joseph C. Crouchet purchased a 1964 pickup truck from Motor City, an auto sales company in Las Vegas. Several weeks later, although he was not in default of his installment payments, the truck was repossessed by a collection agency, Desert Thrift Institution. Checks written by Crouchet and paid to Desert Thrift were deposited to the account of Financial Corporation of America, an institution incorporated by appellant Caple.

Crouchet purchased the truck for $895.00, plus $47.00 for taxes and fees. He was allowed $400.00 for the trade-in of his 1962 Thunderbird, the balance to be paid in biweekly installments. After making several payments he discovered upon awakening one early morning that the pickup truck was gone and learned ultimately that the finance company had repossessed it. Although they acknowledged that the repossession was in error the employees of the financing institutions still required Crouchet to pay an additional $115.00, plus $45.00 repossession fee, but the truck was never returned to him nor

made available for return. The loss included $700.00 worth of tools that were in the truck and a camper body owned by Raynel Campers, Inc. and loaned to Crouchet.

In his suit for damages the trial court gave judgment to Crouchet for $1,150.00 general damages, plus $15,000.00 punitive damages; it awarded $1,000.00 general damages to Raynel Campers, plus $5,000.00 in punitive damages. The judgment was joint and several against the named corporations, the individual employees of the corporations whose names were Rasmussen, Golden and others, but more importantly, Carver Caple, the principal incorporator and corporate officer of the two financing companies, Desert Thrift Institution, Inc. and Financial Corporation of America.

This is the appeal of Carver Caple who contends that the liability should extend only to the corporations, not to him and, further, that the awards of punitive damages were not justified.

1. We listed in North Arlington Medical Building Inc. v. Sanchez Construction Co., 86 Nev. 515, 520, 471 P.2d 240, 243 (1970), the requirements for the application of the alter ego doctrine: (1) the corporation must be influenced and governed by the person asserted to be its alter ego, (2) there must be such unity of interest and ownership that one is inseparable from the other, and (3) the facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice. Each of these elements is present in the findings of fact of the trial court and is supported by substantial evidence in the record.

The injustice to Crouchet and Raynel is apparent. The crass indifference by the employees, Golden and Rasmussen, who were responsible in the treatment accorded Crouchet amounts virtually to willful fraud. They wrongfully appropriated his chattel, then compelled him to pay additional cash and then made no effort to return his chattel or look for it or make him whole. This is the kind of malice that justifies punitive damages.

The first two of the three requisites to set aside the corporate veil are discernible without deep examination. Although his activities with the two corporations were described by Caple in obscure and ambiguous testimony, he alone stands out as the investing and directing force of both corporations. He was the sole investor and stockholder, the only person with direction and control. The corporate entities were a cloak for his personal operation in itself lawful and proper but not when used in an unlawful and improper manner.

There did exist between Caple and the two corporations a unity and interest of ownership of such nature that the corporation had no apparent independent business operation and existed solely for the purpose of conducting the personal business of Caple. This being so the corporation employees were his employees. While Caple may not have been aware of the Crouchet transaction he must stand answerable for the unconscionable conduct of his representatives.

2. The next question is whether the court erred in awarding punitive damages. NRS 42.010 provides that in an action for the breach of an obligation not arising from contract where the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff in addition to actual damages may recover damages for the sake of example and by way of punishing the defendant.

That statute and the concepts of punitive damages was the subject of our discussion in Nevada Cement Co. v. Lemler, 89 Nev. 447, 514 P.2d 1180 (1973), where we stated that a plaintiff is never entitled to punitive damages as a matter of right. Their allowance or denial rests entirely in the discretion of the trier of fact.

The malice contemplated by NRS 42.010 is malice in fact and the phrase "express or implied" has reference only to the evidence by which malice is established. Malice in fact must be established by the evidence if it is the ground relied upon to support an award of punitive damages. Malice in fact sufficient to support an award of damages may be established by a showing that the wrongful conduct was willful, intentional and done in reckless disregard of its possible results.

The trial judge did so find, and properly so, in this case.

3. Finally, appellant challenges the award of punitive damages as being excessive. NRCP 59 includes as grounds for a new trial "excessive damages appearing to have been given under the influence of passion or prejudice." See Miller v. Schnitzer, 78 Nev. 301, 310, 371 P.2d 824, 829 (1962). Again, we stated in Nevada Cement Co. v. Lemler, supra, that the assessing of punitive damages is wholly subjective. There are no objective standards by which the monetary amount can be calculated. The concept of punitive damages rests upon a presumed public policy to punish a wrongdoer for his act and to

deter others from acting in similar fashion. The punitive allowance should be in an amount that would promote the public interest without financially annihilating the defendant. The wrongdoer may be punished but not destroyed.

In Nevada Cement Co. v. Lemler, supra, evidence was received relevant to the financial status of the appellants. Unfortunately, unlike that case and Miller v. Schnitzer, supra, we have no indication of the net worth of the appellant by which the reasonableness of the award might be judged. We find no evidence that the trial court acted under passion or prejudice. Absent the necessary information of financial worth, this court is in no position to question the amount of the award since, while quite high, it does not shock our conscience.

Affirmed.

THOMPSON, C. J., and MOWBRAY, GUNDERSON, and BATJER, JJ., concur.