RUTH LESLIE AND DORIS GOOD, APPELLANTS AND CROSS–RESPONDENTS, v. JONES CHEMICAL CO., INC., A NEW YORK CORPORATION; JONES CHEMICALS, INC., A NEW YORK CORPORATION; JONES CHEMICALS, INC., WESTERN DIVISION, A CALIFORNIA CORPORATION; AND JONES CHEMICAL CO., INC., WESTERN DIVISION, A CALIFORNIA CORPORATION, RESPONDENTS AND CROSS–APPELLANTS.

No. 8003

June 24, 1976                    551 P.2d 234

[Rehearing denied July 22, 1976]

*Galatz, Earl & Biggar,* of Las Vegas, for Appellants and Cross-respondents.

*Beckley, Singleton, DeLanoy & Jemison, Chartered,* of Las Vegas, for Respondents and Cross-appellants.

**OPINION**

By the Court, THOMPSON, J.:

In this personal injury action the defendants admitted liability. Following trial, the jury awarded compensatory and punitive damages to each plaintiff. The verdict favoring plaintiff Leslie was for $150,000 compensatory and $125,000 punitive damages. The verdict for plaintiff Good was for $35,-000 compensatory and $125,000 punitive damages. Believing that the punitive damage awards totalling $250,000 were the result of passion and prejudice, the district court granted the defendants' motion for a new trial unless each plaintiff would accept a remittitur of punitive damages in the amount of $85,-000 for a total of $170,000. The compensatory damage awards were not touched. The plaintiffs have appealed from this discretionary ruling, asserting an abuse of discretion. The defendants have cross-appealed contending that the evidence does not support punitive damages, but that if it may be read to do so, the remittitur fell within the court's discretion.

1. The personal injury to each plaintiff resulted from the inhalation of chlorine gas which, in turn, caused permanent damage to their respiratory systems. The chlorine gas was used as a water purification agent in the operation of the swimming pool of the Sahara Hotel in Las Vegas. A cylinder of that gas exploded spewing approximately 150 pounds of compressed chlorine over the swimming pool and patio areas. The plaintiffs and others were there present when the explosion occurred.

The district court found that the jury reasonably could conclude that the defendants consciously and deliberately disregarded known safety procedures regarding the handling of chlorine cylinders in reckless disregard of possible results, and that such evidence sufficiently established malice in fact to allow punitive damages. NRS 42.010; Nevada Cement Company v. Lemler, 89 Nev. 447, 514 P.2d 1180 (1973). Consequently, that court allowed punitive damages but reduced the awards thereof. We also believe that the record may be read to support punitive damages in some amount and, therefore, deny the cross-appeal. We turn to consider the propriety of the remittitur.

2. The trial court possessed the power to enter the order here challenged. NRCP 59(a)(6); Harris v. Zee, 87 Nev. 309, 486 P.2d 490 (1971); Hotel Riviera, Inc. v. Short, 80 Nev. 505, 396 P.2d 855 (1964). When a remittitur damnum is ordered and we are asked to review, the test is whether the court abused its discretionary power. Harris v. Zee, supra. Admittedly, the standard is somewhat elusive. As noted in Harris v. Zee: "We must accord deference to the point of view of the trial judge since he had the opportunity to weigh evidence and evaluate the credibility of witnesses—an opportunity foreclosed to this court. To this extent, the appeal is weighted in favor of the order entered, and where there is a material conflict of evidence as to the extent of damage, a challenge to the court's exercise of discretion is substantially repelled." Id. at 311, 312.

In that case we reinstated the jury award of compensatory damages since the evidence regarding the personal injury incurred and the claimant's pain and suffering was not in conflict. In the matter before us we are not concerned with the compensatory damage awards. We here are dealing with a remittitur of punitive damages where the evidence regarding the presence or absence of malice in fact on the part of the

defendants is conflicting. In line with the expression in Harris v. Zee, supra, we must accord deference to the view of the trial judge.

As noted by the trial judge there was no evidence to indicate that the defendants acted deliberately to hurt anyone. The malice in fact, if any existed at all, had to be inferred from a disregard of known safety procedures by management personnel of defendants. Realizing the subjective nature of punitive damages, Caple v. Raynel Campers, Inc., 90 Nev. 341, 344, 526 P.2d 334 (1974), the absence of workable standards with which to evaluate the propriety of the amount of such an award, Miller v. Schnitzer, 78 Nev. 301, 310, 371 P.2d 824 (1962), and the arguable conflict of evidence regarding malice in fact, we are wholly unable to find an abuse of discretion by the trial judge in entering the conditional order in issue. His order may not be characterized as one which no reasonable judge would make. Roy v. Levy, 79 A.2d 847, 851 (N.H. 1951).

The conditional order is affirmed; the cross-appeal is dismissed.

MOWBRAY, J., concurs.

GUNDERSON, C. J., and ZENOFF, J., concurring and dissenting:

Together with our brothers Thompson and Mowbray, we believe the trial court properly instructed the jury to consider an award of punitive damages. However, we think the trial court later erred in substituting its own views concerning the amount of punitive damages, in place of the views of the eight citizens who composed the jury.

Of course, whether the record contains sufficient evidence to justify an award of punitive damages is a question of law, and for the court to decide. U.S. Fidelity v. Peterson, 91 Nev. 617, 540 P.2d 1070 (1975). However, where the requisite factual basis for punitive damages exists, the amount of the award rests in the sound discretion of the trier of facts, which in this case was not the trial judge but the jury. Cf. Caple v. Raynel Campers, Inc., 90 Nev. 341, 526 P.2d 334 (1974). It is possible, of course, that some persons may view some kinds of consciously wanton conduct as less culpable than others. Still, where the record justifies the jury's finding of requisite intention or willingness to injure, we believe a reduction of punitive damages may not be justified by the trial judge's personal thoughts about the relative social acceptability of different kinds of willfully wrongful conduct. Our brethren

cite no authority supporting the idea that a trial judge has superadded discretion to reduce punitive damages whenever there is no evidence the particular injury inflicted was "deliberate," but "merely" evidence that in order to operate their business at a higher profit "the defendants consciously and deliberately disregarded known safety procedures regarding the handling of chlorine cylinders in reckless disregard of possible results. . . ."

Of course, where a punitive damage award is so large, as compared to a wrongdoer's total assets, that it will not merely punish but will destroy, then it is proper for the court to intervene. Miller v. Schnitzer, 78 Nev. 301, 371 P.2d 824 (1962). Likewise, the court may intervene when there is some sound basis for saying the award "shocks the judicial conscience." Caple v. Raynel Campers, Inc., cited above; General Electric v. Bush, 88 Nev. 360, 498 P.2d 366 (1972). Here, however, our brothers Thompson and Mowbray seemingly do not suggest that either these, or any other recognized basis for judicial interference, appears of record. Rather, they seem to be saying that a trial judge has unbridled discretion to reassess punitive damages, not because some defined legal standard impels or allows it, but simply because he has a pervasive power in the premises. In sum, they apparently would view a jury's verdict concerning punitive damages as advisory only.

With that aspect of Justice Thompson and Justice Mowbray's views, we cannot concur, and as we understand him, Justice Batjer does not concur with them either. Instead, as we understand him, Justice Batjer merely concurs in reduction of the punitive damages out of belief that the record does not support any award of punitive damages.

We think evidence to support punitive damages is ample, and the jury's award offends no standard heretofore recognized for punitive damages. It should, therefore, be affirmed.

BATJER, J., dissenting in part and concurring in part:

I respectfully dissent from the holding of the majority that, ". . . [T]he record may be read to support punitive damages in some amount." However, as a result of that determination I concur in the affirmance of the district court's conditional order for a new trial and join Thompson, J., and Mowbray, J., in holding that "we are wholly unable to find an abuse of discretion by the trial judge in entering the conditional order."

Shortly after trial began some of the defendants offered to admit liability. Appellants and cross-respondents, hereinafter

referred to as plaintiffs or Leslie and Good, objected. The trial judge asked counsel for plaintiffs if they were seeking punitive damages, and he was advised that they were not. Subsequently all parties entered into a written stipulation agreeing to dismiss with prejudice the action against American Fire and Safety, Inc., and Sahara-Nevada Corporation, d/b/a Hotel Sahara.

After examination of the first witness had commenced the respondents and cross-appellants, hereinafter referred to as defendants or Jones Chemical, admitted liability without objection from plaintiffs. At that juncture in the trial, Leslie and Good moved to amend their complaints to include a claim for punitive damages and the motion was granted.

Following trial, the jury awarded compensatory and punitive damages to each plaintiff. Believing that the punitive damage awards totalling $250,000 were the result of passion and prejudice, the district court granted the defendants' motion for a new trial unless each plaintiff would accept a remittitur of punitive damages in the amount of $85,000 for a total of $170,000. The compensatory damage awards were not altered. In its order conditionally granting a new trial, the district court reaffirmed its conclusion that the defendants had consciously and deliberately disregarded known safety procedures regarding the handling of chlorine cylinders in reckless disregard of possible results and that the evidence sufficiently established malice in fact to allow the jury to assess punitive damages.

Leslie and Good have appealed from this ruling, asserting an abuse of discretion. Jones Chemical cross-appealed contending that the evidence does not support punitive damages, but that if it may be read to do so, the remittitur fell within the district court's discretion. The record does not support punitive damages; consequently, I would reverse that part of the judgment awarding punitive damages.

At the time of the accident Jones Chemical was engaged in the manufacture and sale of compressed chlorine gas for use in commercial swimming pools. Such gas was used as a water purification agent in the operation of the swimming pool at the Sahara Hotel in Las Vegas, Nevada. A cylinder of chlorine gas furnished by defendants exploded, spewing compressed chlorine over the hotel swimming pool and patio areas. The plaintiffs and others were in the vicinity when the explosion occurred. Each plaintiff claimed permanent damage to their respiratory systems from the inhalation of chlorine gas.

Every cylinder used to transport chlorine gas has a tare weight (empty weight) stamped on it. Each time a cylinder is filled it is supposed to be weighed in an empty condition and the weight of the empty cylinder compared with the tare weight. The purpose of this test is to determine if the cylinder has lost some of its original weight as a result of corrosion. If the cylinder loses a certain part of its original weight, it is supposed to be condemned (at the time of the accident the standard was 10% of the original weight; at the time of trial the standard was 5% of the original weight).

Apparently the cylinder had suffered from internal corrosion and had lost some 21% of its original weight. The corroded condition of the cylinder may have resulted in it being filled beyond its capacity. While sitting in the sun the chlorine gas expanded and the cylinder in its weakened condition ruptured.

Safety in the handling of the chlorine gas depends upon the prevention and detection of internal corrosion in a cylinder. Several procedures are to be followed in the proper prevention and detection. Precautions are to be taken to prevent the introduction of water into a cylinder, and tests are to be conducted to determine if corrosion has taken place. The two principal tests are a visual inspection conducted by dropping a light into the tank and weighing of the empty cylinder to determine if there has been a loss of its original weight.

It can be inferred that these safeguards were not properly taken with respect to the ruptured cylinder and this failure contributed to the accident. This conduct subjected the defendants to compensatory damages but not necessarily to an assessment of punitive damages.

At trial only Wendell O'Dell Sinyard, a truck driver for Jones Chemical, testified about the handling of the defective cylinder. He was the person who delivered the cylinder to the Sahara Hotel. He testified that he had placed it in an open uncovered area at the request of an employee of the hotel. Although the pool manager testified that he did not request its placement in the open area and did not know of any other employee making such a request, the fact that Sinyard delivered three cylinders to the hotel and placed one or two of them in the covered area lends some credence to his testimony.

Sinyard had worked for Jones Chemical for approximately four years, and he testified very generally that some empty cylinders without valves may have been left in an uncovered area of the plant. He was unable to give any specific testimony about the handling of the defective cylinder or the handling of

any other cylinders at the Jones Chemical plant in Henderson, Nevada.

James E. Kendell, a laborer employed by Jones Chemical for two months during the summer of 1970, testified that he had helped weigh and fill some cylinders with chlorine gas and had never observed anyone remove valves from the cylinders or inspect them. There was no testimony from this witness indicating whether he helped fill and weigh the subject cylinder or even if he was employed by the defendants at the time of the accident.

Edward Kubiak was manager of the Jones Chemical plant at Henderson at the time the faulty cylinder was filled and dispatched. He was the only managerial employee who was familiar with the actual operation of the plant. He was never deposed, and his death prior to trial precluded his testifying.

The employee who actually weighed and filled the defective cylinder was never called as a witness. The general manager of the Henderson plant testified that he knew nothing of the plant operation because his responsibilities were in the selling of the product and contacting customers and prospective customers. He testified to delivering the engineering department of the Sahara Hotel an instruction bulletin, referred to in the testimony as a "sign," designed to advise on the handling of chlorine gas. Included in the bulletin was an admonition against leaving a cylinder in the sun.

The pool manager for the Sahara Hotel testified that ". . . [W]e were given the instructions after the explosion. They brought in the sign for us to post." There is no clarification who "they" were. It cannot be discerned from the record whether he was referring to employees of Jones Chemical or to persons from the Sahara Hotel engineering office.

The practice of awarding punitive damages seems to have "originated in the English courts in the eighteenth century as a means of justifying awards of damages in excess of the plaintiff's tangible harm." Note, Exemplary Damages in the Law of Torts, 70 Harv.L.Rev. 517, 518 (1957). Punitive damages are awarded primarily to punish the offender and to deter others. These are the same objectives which motivate the criminal law; however, in a criminal case the conduct which gives rise to the imposition of punishment must be clearly defined. That is not so when the question is whether the conduct of the defendant can be characterized as wanton, willful or intentional, and done in reckless disregard of its possible results because such conduct shades imperceptibility into simple negligence.

In a criminal case the fine imposed goes to the state, but in a civil case the extraction of punitive damages becomes a windfall for the plaintiff. The maximum and minimum amounts of the fine imposed by way of punishment and deterrence in a criminal case are fixed by statute. In the civil case, however, in awarding punitive damages the jury is generally left to take from the defendant and deliver to the plaintiff such amount as it sees fit. See Mattyasovszky v. West Towns Bus Company, 330 N.E.2d 509 (Ill. 1975).

The justifications for the imposition of punitive damages are sharply diminished in those cases in which liability is imposed vicariously. Mattyasovszky v. West Towns Bus Company, supra. See Restatement (Second) of Torts, § 909 (Tent. Draft No. 19, 1973); Prosser, Law of Torts 12 (4th ed. 1971). Compare Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832 (2nd Cir. 1967), with Toole v. Richardson-Merrell, Inc., 60 Cal.Rptr. 398 (Cal.App. 1967).

"Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if; (a) the principal authorized the doing and the manner of the act, or (b) the agent was unfit and the principal was reckless in employing him, or (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or (d) the principal or a managerial agent of the principal ratified or approved the act." Restatement (Second) of Agency § 217C (1958). Serious questions concerning the reasonable effectiveness of punitive damages inevitably arise in a case like the present, where the employees whose conduct was primarily responsible for the injury were never joined as parties.

Although the district court in its decision and order conditionally granting a new trial concluded that "the jury could reasonably find that the defendants consciously and deliberately disregarded known safety procedures regarding the handling of chlorine cylinders in reckless disregard of possible results," there is no evidence that Jones Chemical, through its managerial staff, authorized the doing or manner of the acts which led to the injury. As a matter of fact, the contrary is true because there were certain written instructions available to the employees that cautioned them in the handling of chlorine gas. Likewise, there is no evidence that the employees were unfit for their particular jobs or that Jones Chemical was reckless in employing them. None of the employees that handled the ruptured cylinder were acting in a managerial capacity, and although plaintiffs conclude in their "statement of fact"

set forth in their opening brief that the management of Jones Chemical ratified and approved the negligent conduct of the employees who handled the cylinder on the day it ruptured, there is no evidence in the record to support that conclusion.

In Nevada an award of damages for punishment is controlled by NRS 42.010[1] which authorizes such an award against a tortfeasor who has been guilty of oppression, fraud or malice, expressed and implied.

In Village Development Co. v. Filice, 90 Nev. 305, 315, 526 P.2d 83 (1974), we said: "The record contains evidence to show negligence and unconscionable irresponsibility. Still, after careful consideration and extensive debate, we find insufficient evidence to support a finding of 'oppression, fraud or malice, express or implied.' NRS 42.010." Much the same situation exists in the case before us. Jones Chemical has admitted negligence and the record reveals irresponsibility on the part of some of its employees; however, there is really no evidence to support a finding of "oppression, fraud or malice, express or implied."

The evil motive factor of malice, which would have justified an award of punitive damages in this case, called upon the district court to assess the state of mind of the defendant's management at the Henderson plant before granting the plaintiffs' motion to amend to ask for punitive damages. Such an assessment is not satisfied by merely characterizing its conduct as consciously deliberate. On the other hand, substantial evidence of a conscious disregard of safety is an appropriate description of the *animus malus* which may justify an award of punitive damages when a nondeliberate injury occurs.[2]

---

[1]NRS 42.010: "In an action for a breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

[2]See Gilman Paper Co. v. James, 219 S.E.2d 447, 450 (Ga. 1975), where the Georgia Supreme Court said: "To authorize the imposition of punitive damages there must be evidence of wilful misconduct, malice, fraud, wantonness, or oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences. The latter expression relates to an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights." But cf. Moore v. Jewell Tea Company, 253 N.E.2d 636 (Ill.App. 1969), aff'd, 263 N.E.2d 103 (Ill. 1970), where the Illinois court admitting, "It is difficult, if not impossible, to lay down a short and simple governing rule in this subject [punitive damages]," and relying upon Toole v. Richardson-Merrell, Inc., supra, without regard to Roginsky v.

There is no evidence to establish that any of the chemical company's agents or employees intended to injure either plaintiff. They were not sued as principals. None of them acted with such a conscious disregard of plaintiffs' safety that they would have been subject to an assessment of punitive damages had they been joined as parties. See American Fidelity Co. v. Farmer, 48 S.E.2d 122 (Ga.App. 1948).

Malice in fact sufficient to justify an award of punitive damages must be supported by substantial evidence that the wrong was committed willfully or with a design to injure, or that the tortfeasor acted in conscious disregard of the injured plaintiffs' safety. Caple v. Raynel Campers, Inc., 90 Nev. 341, 526 P.2d 334 (1974); Village Development Co. v. Felice, supra; Nevada Credit Rating Bureau, Inc. v. Williams, 88 Nev. 601, 503 P.2d 9, 56 A.L.R.3d 483 (1972). See G. D. Searle & Co. v. Superior Court, Cty. of Sacramento, 122 Cal.Rptr. 218 (Cal.App. 1975). A plaintiff is never entitled to punitive damages as a matter of right. Caple v. Raynel Campers, Inc., supra; Nevada Cement Co. v. Lemler, 89 Nev. 447, 514 P.2d 1180 (1973).

In every case decided by this court since the enactment of NRS 42.010,[3] with the exception of *Village Development,* the records revealed substantial evidence of deliberate, willful and intentional overt acts which meet the demand for evil motive

---

Richardson-Merrell, Inc., supra, upheld an award of punitive damages in the amount of $10,000 against Drackett Products Company and the Drackett Company after one of their cans of Drano exploded and blinded the plaintiff. Illinois has no statutory limitations such as NRS 42.010 on the award of punitive damages, and it is well established in Illinois that where there is evidence of willful and wanton conduct punitive damages may be allowed. Madison v. Wigal, 153 N.E.2d 90 (Ill.App. 1958). In *Moore,* no distinction was made between deliberate and nondeliberate torts. Evidence of gross failure to exercise care for the safety of others was apparently deemed to be willful and wanton conduct.

[3]In addition to Caple v. Raynel Campers, Inc., supra; Nevada Cement Co. v. Lemler, supra, and Nevada Credit Rating Bureau, Inc. v. Williams, supra, we have decided Midwest Supply, Inc. v. Waters, 89 Nev. 210, 510 P.2d 876 (1973); Alper v. Western Motels, Inc., 84 Nev. 472, 443 P.2d 557 (1968). Although neither was decided with reference to NRS 42.010, there was evidence in both records of deliberate acts supplying the evil motive factor of malice. Cf. United States Fidelity Guaranty Company v. Peterson, 91 Nev. 617, 540 P.2d 1070 (1975), where without reference to NRS 42.010, we approved the trial court's refusal to entertain Peterson's request that the jury be instructed on punitive damages, because "the necessary requisites to support punitive damages are not present." "Necessary requisites" were neither delineated nor defined.

which is the heart of our punitive damage statute. In those cases the intent of that statute would have been violated if an award for punitive damages had been found only upon *reckless* disregard. See Ebaugh v. Rabkin, 99 Cal.Rptr. 706 (Cal.App. 1972); Gombos v. Ashe, 322 P.2d 933 (Cal. 1958).

In Davis v. Hearst, 116 P. 530 (Cal. 1911), the fountainhead of California case law on exemplary damages, that court said: "[I]t is only upon some showing regarded by the law as adequate to establish the presence of malice in fact (that is, the motive and willingness to vex, harass, annoy or injure) that punitive damages have ever been awarded." 116 P. at 539.

"[T]he animus malus must be shown to exist in every case before an award in punitive damages may be made against a defendant, since the evil motive is the controlling and essential factor which justifies such an award. . . ." 116 P. at 540.

Consistent adherence to our formulations in *Nevada Credit, Caples* and *Nevada Cement* is not difficult when the substantial evidence shows a deliberate tort. However, when faced with a nondeliberate tort there must be evidence of a conscious disregard of the safety of others on the part of those responsible. See G. D. Searle & Co. v. Superior Court, Cty. of Sacramento, supra. Here the conduct of the employees of Jones Chemical is imperceptible from negligence and there is no evidence of conscious managerial disregard for the safety of others.

I believe the district court erred in submitting to the jury the question of punitive damages. That part of the judgment awarding punitive damages should be reversed.